# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| |
|---|
| AMERICAN MANUFACTURERS OF MULTILAYERED WOOD FLOORING, |
| Plaintiff, |
| v. |
| UNITED STATES, |
| Defendant, |
| and |
| JIANGSU GUYU INTERNATIONAL TRADING CO., LTD., *et al.*, |
| Defendant-Intervenors. |

Before: Hon. M. Miller Baker, Judge

Court No. 21-00595

## ORDER

Upon consideration of the motion of Plaintiff American Manufacturers of Multilayered Wood Flooring ("AMMWF") for judgment on the agency record, and all other papers and proceedings herein, it is hereby

**ORDERED**, that the AMMWF's motion for judgment on the agency record is granted; and it is further

Ct. No. 21-00595

**ORDERED**, that this action is remanded to the U.S. Department of Commerce for proceedings consistent with this Court's opinion.

**SO ORDERED.**

_____<br>Hon. M. Miller Baker, Judge

Dated: _____, 2022
       New York, New York

# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **AMERICAN MANUFACTURERS OF MULTILAYERED WOOD FLOORING,**<br><br>　　　　　**Plaintiff,**<br><br>　　v.<br><br>**UNITED STATES,**<br><br>　　　　　**Defendant,**<br><br>　　and<br><br>**JIANGSU GUYU INTERNATIONAL TRADING CO., LTD.,** *et al.*,<br><br>　　　　　**Defendant-Intervenors.** | **Before: Hon. M. Miller Baker, Judge**<br><br>**Court No. 21-00595** |

## <u>AMERICAN MANUFACTURERS OF MULTILAYERED WOOD FLOORING'S RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD</u>

Pursuant to Rule 56.2 of the Rules of the United States Court of

International Trade, the American Manufacturers of Multilayered

Wood Flooring ("AMMWF") hereby respectfully moves for judgment

upon the agency record with respect to the final results issued by the

U.S. Department of Commerce ("Commerce") in the 2018-2019

administrative review of the antidumping duty order on Chinese

Ct. No. 21-00595

multilayered wood flooring. *See Multilayered Wood Flooring from the People's Republic of China*, 86 Fed. Reg. 59,987 (Dep't Commerce Oct. 29, 2021) (final results of antidumping duty administrative review, final successor-in-interest determination, and final determination of no shipments; 2018-2019), P.R. 280, Appx____ and accompanying Issues and Decision Memorandum, P.R. 279, Appx____.

AMMWF respectfully moves, for the reasons explained in the accompanying memorandum, that this Court find that agency findings, conclusions, and/or determinations with respect to this decision are unsupported by substantial evidence and not in accordance with law. AMMWF further moves that the Court remand this determination to Commerce for disposition consistent with the Court's final opinion.

**Ct. No. 21-00595**

Respectfully submitted,

*/s/ Timothy C. Brightbill*
Timothy C. Brightbill, Esq.
Maureen E. Thorson, Esq.
Stephanie M. Bell, Esq.
Tessa V. Capeloto, Esq.
Theodore P. Brackemyre, Esq.

**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel for Plaintiff,*
*American Manufacturers of*
*Multilayered Wood Flooring*

Dated: May 2, 2022

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

AMERICAN
MANUFACTURERS OF
MULTILAYERED WOOD
FLOORING,

              Plaintiff,

     v.

UNITED STATES,

              Defendant,

    and

JIANGSU GUYU
INTERNATIONAL TRADING
CO., LTD., *et al.*,

              Defendant-
              Intervenors.

Before: Hon. M. Miller Baker,
Judge

Court No. 21-00595

## AMERICAN MANUFACTURERS OF MULTILAYERED WOOD FLOORING'S MEMORANDUM IN SUPPORT OF RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD

Timothy C. Brightbill, Esq.
Maureen E. Thorson, Esq.
Stephanie M. Bell, Esq.
Tessa V. Capeloto, Esq.
Theodore P. Brackemyre, Esq.

WILEY REIN LLP
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel for Plaintiff,*
*American Manufacturers of*
*Multilayered Wood Flooring*

Dated: May 2, 2022

Ct. No. 21-00595

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................ 1

II.    RULE 56.2 STATEMENT ................................................ 1

    A.    Administrative Determination Under Review ...................... 1

    B.    Issues Presented and Summary of Argument ....................... 2

III.    STATEMENT OF FACTS ................................................ 4

IV.    STANDARD OF REVIEW .............................................. 14

V.    ARGUMENT ...................................................................... 17

    A.    Commerce Erred in its Determination of the Margin Assigned to Separate-Rate Companies ................................ 17

    B.    Commerce Erred in Denying Jinlong a Separate Rate ........ 25

VI.    CONCLUSION .................................................................. 34

Ct. No. 21-00595

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*Albemarle Corp. v. United States*,
    821 F.3d 1345 (Fed. Cir. 2016) ........................................................... 18

*Altx, Inc. v. United States*,
    25 CIT 1100, 167 F. Supp. 2d 1353 (2001) ......................................... 16

*Altx, Inc. v. United States*,
    370 F.3d 1108 (Fed. Cir. 2004) ........................................................... 14

*AMS Assocs., Inc. v. United States*,
    737 F.3d 1338 (Fed. Cir. 2013) ........................................................... 17

*Baroque Timber Indus. (Zhongshan) Co. v. United States*,
    971 F. Supp. 2d 1333 (Ct. Int'l Trade 2014) ...................................... 15

*CS Wind Vietnam Co. v. United States*,
    832 F.3d 1367 (Fed. Cir. 2016) ........................................................... 15

*Fresh Garlic Producers Ass'n v. United States*,
    121 F. Supp. 3d 1313 (Ct. Int'l Trade 2015) ...................................... 27

*Jilin Henghe Pharm. Co. v. United States*,
    28 CIT 969, 342 F. Supp. 2d 1301 (2004), *vacated on
    other grounds*, 123 F. App'x 402 (Fed. Cir. 2005). .............................. 17

*Maverick Tube Corp. v. United States*,
    857 F.3d 1353 (Fed. Cir. 2017) ........................................................... 15

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut.
    Auto. Ins. Co.*, 463 U.S. 29 (1983) ................................................. 15, 24

*Nippon Steel Corp. v. United States*,
    458 F.3d 1345 (Fed. Cir. 2006) ........................................................... 16

Ct. No. 21-00595

*Prime Time Commerce LLC v. United States*,
396 F. Supp. 3d 1319 (Ct. Int'l Trade 2019) ........................................ 30

*Shanghai Foreign Trade Enters. Co. v. United States*,
28 CIT 480, 318 F. Supp. 2d 1339 (2004)............................................ 16

*Sigma Corp. v. United States*,
117 F.3d 1401 (Fed. Cir. 1997) ............................................................. 5

*Solianus, Inc. v. United States*,
391 F. Supp. 3d 1331 (Ct. Int'l Trade 2019) .......................... 18, 22, 23

*SKF USA Inc. v. United States*,
263 F.3d 1369 (Fed. Cir. 2001) ........................................................... 16

*Yangzhou Bestpak Gifts & Crafts Co. v. United States*,
716 F.3d 1370 (Fed. Cir. 2013) ..................................................... 15, 19

*YC Rubber Co. (N. Am.) LLC v. United States*,
487 F. Supp. 3d 1367 (Ct. Int'l Trade 2020) ..................................... 20

**Statutes**

19 U.S.C. § 1516a(b)(1)(B)(i) .................................................. 14, 27, 28

19 U.S.C. § 1671d(c)(5)(A) ...................................................................... 4

19 U.S.C. § 1673d(c)(5)(A) .................................................. 10, 17, 22, 24

19 U.S.C. § 1677f(i)(3)(A) ...................................................................... 16

**Administrative Materials**

*Antidumping or Countervailing Duty Order, Finding, or
Suspended Investigation; Opportunity to Request
Administrative Review*, 84 Fed. Reg. 66,880 (Dep't
Commerce Dec. 6, 2019)......................................................................... 4

*Certain Steel Nails from the People's Republic of China*,
84 Fed. Reg. 55,906 (Dep't Commerce Oct. 18, 2019) ....................... 32

**Ct. No. 21-00595**

*Certain Steel Nails from the People's Republic of China,*
  85 Fed. Reg. 22,399 (Dep't Commerce Apr. 22, 2020) ........................ 32

*Drawn Stainless Steel Sinks from the People's Republic of*
  *China*, 83 Fed. Reg. 67,226 (Dep't Commerce Dec. 28,
  2018) .................................................................................................. 31

*Multilayered Wood Flooring from the People's Republic of*
  *China*, 76 Fed. Reg. 64,318 (Dep't Commerce Oct. 18,
  2011) ............................................................................................. 6, 26

*Multilayered Wood Flooring from the People's Republic of*
  *China*, 85 Fed. Reg. 78,118 (Dep't Commerce Dec. 3, 2020) .......... 6, 26

*Multilayered Wood Flooring from the People's Republic of*
  *China*, 84 Fed. Reg. 38,002 (Dep't Commerce Aug. 5,
  2019) .................................................................................................. 25

*Tapered Roller Bearings and Parts Thereof, Finished and*
  *Unfinished, from the People's Republic of China*, 81 Fed.
  Reg. 45,455 (Dep't Commerce July 14, 2016) .................................... 20

**Other Authorities**

Uruguay Round Agreements Act, H.R. Doc. No. 103-316,
  vol. 1 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040 ............... 10, 18, 22

Ct. No. 21-00595

## <u>GLOSSARY</u>

**AMMWF**

> American Manufacturers of Multilayered Wood Flooring

**CBP**

> Customs & Border Protection

**I&D Memo**

> Issues and Decision Memorandum

**Jinlong**

> Fusong Jinlong Group

**MLWF**

> Multilayered Wood Flooring

**NLRB**

> National Labor Relations Board

**NME**

> Non-Market Economy

**SAA**

> Statement of Administrative Action

**Senmao**

> Jiangsu Senmao Bamboo and Wood Industry Co., Ltd.

**SRC**

> Separate Rate Certification

**Ct. No. 21-00595**

**Universal**

Tianjin Universal Machinery Imp. & Exp. Corporation

**U.S.C.C.A.N.**

United States Code Congressional and Administrative News

Ct. No. 21-00595

## I.   <u>INTRODUCTION</u>

On behalf of the American Manufacturers of Multilayered Wood Flooring ("AMMWF"), a coalition of domestic producers of wood flooring products, we respectfully submit this brief in support of AMMWF's Rule 56.2 motion for judgment on the agency record.

## II.   <u>RULE 56.2 STATEMENT</u>

### A.   <u>Administrative Determination Under Review</u>

In this action, AMMWF challenges certain aspects of the final results issued by the U.S. Department of Commerce ("Commerce") in the 2018-2019 administrative review of the antidumping duty order on multilayered wood flooring from the People's Republic of China ("China"). *See Multilayered Wood Flooring from the People's Republic of China*, 86 Fed. Reg. 59,987 (Dep't Commerce Oct. 29, 2021) (final results of antidumping duty administrative review, final successor-in-interest determination, and final determination of no shipments; 2018-2019), P.R. 280, Appx____ ("*Final Results*") and accompanying Issues and Decision Memorandum, P.R. 279, Appx____ ("I&D Memo").

Ct. No. 21-00595

     **B.**   **Issues Presented and Summary of Argument**

          **1.**   **Whether Commerce improperly deviated from the "expected method" for determining the antidumping duty margin applied to companies that were not individually examined, where it failed to average the final antidumping duty margins for individually examined respondents?**

Yes. Despite selecting two respondent companies for individual examination, Commerce did not rely on both companies' margins when determining the margin assigned to non-individually examined respondents. Rather, it excluded the margin determined for the Fusong Jinlong Group ("Jinlong")[1] from consideration, and based the non-examined companies' margin entirely on the margin calculated for the second mandatory respondent, Jiangsu Senmao Bamboo and Wood Industry Co., Ltd. ("Senmao"). While Commerce stated that it would not include Jinlong's margin in the calculation because Jinlong was part of

---

[1]   The Fusong Jinlong Group is comprised of Dalian Qianqiu Wooden Product Co., Ltd., Fusong Jinlong Wooden Group Co., Ltd., Fusong Jinqiu Wooden Product Co., Ltd., and Fusong Qianqiu Wooden Products Co., Ltd. *See* Memorandum from Alexis Cherry to Irene Darzenta Tzafolias, re: *Antidumping Administrative Review of Multilayered Wood Flooring from the People's Republic of China; 2018-2019: Respondent Selection* (Mar. 19, 2020) at 1 n.1, C.R. 47-48, P.R. 156, Appx____ ("Respondent Selection Memo").

Ct. No. 21-00595

the unreviewed, China-wide entity, Commerce failed to adequately
explain and support its treatment of Jinlong, or its deviation from the
expected method.

### 2. Whether Commerce erred in treating Jinlong as part of the China-wide entity.

Yes. Jinlong submitted a timely, complete separate rate certification
to Commerce—information essentially identical with that provided by
other companies to which the agency granted a separate rate.
Commerce nonetheless refused to grant Jinlong a separate rate on the
basis that a company selected for individual examination is not entitled
to a separate rate unless it submits a response to at least Section A of
the agency's questionnaire. But Commerce's rationale for denying
Jinlong's separate rate status was inadequate. Commerce failed to
address the affirmative record evidence regarding Jinlong's freedom
from governmental control, and did not explain how its conclusion that
Jinlong is subject to such control is supported in light of this affirmative
evidence. Commerce's conclusion is also arbitrary, inasmuch as the
agency concluded that numerous other Chinese wood flooring
companies had rebutted the presumption of government control based

Ct. No. 21-00595

on information that was substantively identical to that provided by

Jinlong.

## III.  <u>STATEMENT OF FACTS</u>

Pursuant to 19 U.S.C. § 1675(a), after the imposition of an

antidumping duty order, Commerce annually publishes a notice of an

opportunity for interested parties to request a review of the order. *See,*

*e.g.*, *Antidumping or Countervailing Duty Order, Finding, or Suspended*

*Investigation; Opportunity to Request Administrative Review*, 84 Fed.

Reg. 66,880, 66,881 (Dep't Commerce Dec. 6, 2019). Where review is

requested for more companies than Commerce can practicably review

individually, the agency selects a subset of respondent companies for

individual examination. *See, e.g.*, Respondent Selection Memo at 2-3,

Appx____. It then bases the final margin for the non-examined

companies on the results determined for individually examined

respondents. *See* 19 U.S.C. § 1671d(c)(5)(A); *see also* Preliminary

Decision Memorandum accompanying *Multilayered Wood Flooring from*

*the People's Republic of China*, 86 Fed. Reg. 22,016 (Dep't Commerce

Apr. 26, 2021) (preliminary results of the antidumping duty

administrative review, preliminary determination of no shipments,

4

Ct. No. 21-00595

preliminary successor-in-interest determination, and rescission of review, in part; 2018-2019) at 15, P.R. 238, Appx____ ("Preliminary Decision Memo").

In proceedings involving non-market economies ("NME"), including China, Commerce applies a rebuttable presumption that all companies within the subject country are subject to government control, and thus part of a "country-wide" entity. *See, e.g.*, *Sigma Corp. v. United States*, 117 F.3d 1401, 1405 (Fed. Cir. 1997). To overcome this presumption, companies—including those that are not selected for individual examination—must provide certain data regarding their operations. For companies that were found independent of government control in prior segments of a proceeding, this information takes the form of a document typically called a "separate rate certification." *See, e.g.*, Enforcement & Compliance, U.S. Dep't of Commerce, Separate Rate Certification for Firms Previously Awarded Separate Rate Status, https://enforcement.trade.gov/nme/sep-rate-files/cert-20150323/prc-sr-cert-20150323.pdf (last updated Mar. 23, 2015).

Jinlong first applied for, and received, a separate rate in the original investigation into Chinese multilayered wood flooring, more than ten

Ct. No. 21-00595

years ago. *See Multilayered Wood Flooring from the People's Republic of China*, 76 Fed. Reg. 64,318, 64,321 (Dep't Commerce Oct. 18, 2011) (final determination of sales at less than fair value) ("*Investigation Final Results*"). In the review immediately preceding the one at bar, Commerce selected Jinlong as a mandatory respondent, continued to find that the company had demonstrated independence from the government, and calculated a zero percent margin for the group. *Multilayered Wood Flooring from the People's Republic of China*, 85 Fed. Reg. 78,118, 78,119 (Dep't Commerce Dec. 3, 2020) (final results of antidumping duty administrative review and new shipper review and final determination of no shipments; 2017-2018) ("*2017-2018 Final Results*").

On February 6, 2020, Commerce initiated an administrative review of the antidumping duty order on Chinese multilayered wood flooring for the period from December 1, 2018 through November 30, 2019. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 85 Fed. Reg. 6,896, 6,899-6,901 (Dep't Commerce Feb. 6, 2020), P.R. 36, Appx____ ("*Initiation Notice*"). As initiated, the review covered nearly one hundred companies. *See, e.g.*, Respondent Selection Memo

6

Ct. No. 21-00595

at 2, Appx____. In conjunction with the review, Jinlong and a number of

other entities that had been found independent of Chinese

governmental control in prior segments of the proceeding filed separate

rate certifications. *See, e.g.*, Letter from DeKieffer & Horgan, PLLC to

Sec'y Commerce, re: *Multilayered Wood Flooring from the People's*

*Republic of China: Separate Rate Certification* (Mar. 9, 2020), C.R. 41,

P.R. 140, Appx____ ("Jinlong's SRC"). Commerce did not request any

supplemental information from Jinlong regarding its separate rate

certification.[2]

---

[2]  Commerce issued supplemental questionnaires to four companies
that filed separate rate certifications. Each questionnaire contained a
single question, asking the companies to confirm that they had shipped
subject merchandise during the review period, notwithstanding the fact
that the U.S. Customs & Border Protection ("CBP") data on the record
did not appear to reflect such shipments. Letter from Rebecca Trainor
to Benxi Flooring Factory (General Partnership), re: *Separate Rate*
*Certification Supplemental Questionnaire* (June 29, 2020), P.R. 195,
Appx____; Letter from Rebecca Trainor to Jiashan HuiJiaLe Decoration
Material Co., Ltd., re: *Separate Rate Certification Supplemental*
*Questionnaire* (June 29, 2020), P.R. 193, Appx____; Letter from Rebecca
Trainor to Kember Hardwood Flooring, Inc., re: *Separate Rate*
*Certification Supplemental Questionnaire* (June 29, 2020), P.R. 194,
Appx____; Letter from Rebecca Trainor to Xuzhou Shenghe Wood Co.,
Ltd., re: *Separate Rate Certification Supplemental Questionnaire*
(June 29, 2020), P.R. 192, Appx____. No supplemental questionnaire
was issued to Jinlong, presumably because shipments from the

Ct. No. 21-00595

On March 19, 2020, Commerce selected Jinlong and Senmao as mandatory respondents for the review. *See generally* Respondent Selection Memo, Appx____. Commerce issued its initial Sections A-D questionnaires to Jinlong and Senmao on March 25, 2020. *See, e.g.*, Letter from Rebecca Trainor to Fusong Jinlong Group (Mar. 25, 2020), P.R. 160, Appx____. On April 4, 2020, Jinlong filed a letter with Commerce, stating that "Jinlong is unable to respond to {Commerce}'s initial questionnaire in this review for reasons associated with the ongoing COVID-19 health crisis." Letter from DeKieffer & Horgan, PLLC to Sec'y Commerce, re: *Multilayered Wood Flooring from China: Jinlong Notice of Intent Not to Participate* (Apr. 14, 2020) at 1, P.R. 170, Appx____ ("Jinlong's Notice"). Between April and July 2020, Commerce received responses to the initial Section A-D questionnaires from Senmao, issued Senmao a supplemental questionnaire, and received a response to that supplemental questionnaire. Preliminary Decision Memo at 3, Appx____. Commerce did not conduct any verification of questionnaire responses or separate rate filings. *See id.*

---

company were reflected in the CBP data. *See generally* Respondent Selection Memo, Appx____.

Ct. No. 21-00595

On April 19, 2021, Commerce issued its preliminary decision memorandum. *See id.* at 1, Appx____. Commerce noted that Jinlong had filed a separate rate certification. *Id.* at 14, Appx____. However, because Jinlong did not respond to the initial questionnaire, Commerce preliminarily found that Jinlong had "not established eligibility for a separate rate and is part of the China-wide entity." *Id.* In so finding, Commerce noted language in the initiation notice stating that companies that filed separate rate certifications but were later selected as mandatory respondents would not be considered eligible for separate rate status "unless they respond to all parts of the questionnaire as mandatory respondents." *Id.* at 14 n.83, Appx____ (quoting *Initiation Notice*, 85 Fed. Reg. at 6,897, Appx____). Commerce also found that while a review of Jinlong had been requested, "no party requested a review of the China-wide entity." *Id.* at 15, Appx____. Commerce then stated that it was "not conducting a review of the China-wide entity." *Id.*

The agency next detailed its preliminary calculation of the margin for non-examined, separate-rate companies. Commerce noted that the Statement of Administrative Action accompanying the Uruguay Round

9

Ct. No. 21-00595

Agreements Act ("SAA") states that the agency will normally determine the margin to be assigned to non-examined companies by averaging the margins determined for the mandatory respondents, excluding any zero/*de minimis* margins and margins based entirely on the facts available. *Id.*; SAA, H.R. Doc. No. 103-316, vol. 1, at 873 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040, 4201; 19 U.S.C. § 1673d(c)(5)(A). In those cases in which all of the mandatory respondents receive margins that are zero/*de minimis* or based entirely on the facts available, the SAA states that the "expected method" will be to average the mandatory respondents' margins, unless doing so is "not feasible" or would produce a result that is not "reasonably reflective of potential dumping margins." Preliminary Decision Memo at 15-16, Appx____ (quoting SAA at 873, 1994 U.S.C.C.A.N. at 4201). Commerce stated that here, "we have not determined that use of the expected method is not feasible." *Id.* at 16, Appx____. However, rather than average the margins determined for Jinlong and Senmao, Commerce instead assigned all of the 35 separate rate respondents the zero margin preliminarily calculated for Senmao. *Id.*; *see also Final Results*, 86 Fed. Reg. at 59,988-90, Appx____.

Ct. No. 21-00595

AMMWF argued in its case brief that Commerce had erred in
deviating from the "expected method" in determining the margin for
non-selected companies, and, alternatively, in denying separate rate
status to Jinlong. Letter from Wiley Rein LLP to Sec'y Commerce, re:
*Multilayered Wood Flooring from the People's Republic of China: Case
Brief* (June 2, 2021) at 3-12, P.R. 259, Appx____ ("AMMWF's Case
Brief"). AMWWF argued that, in determining the separate rate,
Commerce could not reasonably treat Jinlong as if it did not exist, or
was not subject to review. *Id.* at 6, Appx____. AMWWF cited *Solianus,
Inc. v. United States* for the proposition that even if a company fails to
cooperate with Commerce's proceedings, it is considered "individually
investigated" for purposes of the determination of the margin assigned
to separate-rate companies, so long as it is selected as a mandatory
respondent. *Id.* at 6-7, Appx____ (discussing 391 F. Supp. 3d 1331,
1338-39 (Ct. Int'l Trade 2019)). AMWWF also noted that the separate
rate that would be produced through averaging the zero margin
calculated for Senmao and the rate assigned to Jinlong would be
identical to the separate rate in the 2016-2017 administrative review.
*Id.* at 7, Appx____ (citing *Multilayered Wood Flooring from the People's*

11

Ct. No. 21-00595

*Republic of China*, 84 Fed. Reg. 38,002, 38,003-04 (Dep't Commerce Aug. 5, 2019) (final results of antidumping duty administrative review and final determination of no shipments; 2016-2017) ("*2016-2017 Final Results*")).

AMMWF also argued that while Jinlong's failure to respond to questionnaires merited application of adverse inferences, Commerce erred in refusing to grant the company separate rate status for purposes of the review. *Id.* at 8-12, Appx____. AMMWF noted that Jinlong had provided in its separate rate certification the same information that was accepted as adequate to support the separate rate status of other companies. *Id.* at 8, Appx____. AMMWF argued that, accordingly, it was arbitrary for Commerce to decline to grant Jinlong separate rate status simply because it was selected for individual examination. *Id.* at 8-9, Appx____. Rather, AMMWF argued that Commerce should grant Jinlong its separate rate status and then apply adverse inferences in relation to Jinlong's failure to cooperate with respect to the initial Sections A-D questionnaires. *Id.* at 9-12, Appx____.

In its final results, Commerce continued to assign separate-rate companies the zero percent margin calculated for Senmao, and to deny

**Ct. No. 21-00595**

Jinlong separate rate status. I&D Memo at 17-21, Appx____. With respect to its exclusion of Jinlong's margin from the separate rate calculation, Commerce stated that it was not applying an adverse inference with respect to Jinlong. Instead, while conceding that Jinlong itself was "under review," Commerce simultaneously held that it was part of the China-wide entity, which was not subject to review. *Id.* at 19-20, Appx____. Based on its determination that Jinlong was part of the China-wide entity, Commerce concluded that "the only rate under consideration pursuant to the expected method is the calculated margin for the sole mandatory respondent which established its eligibility for a separate rate." *Id.* at 20, Appx____.

In explaining its treatment of Jinlong as ineligible for separate rate status, Commerce observed that its initiation notice stated that any company selected as a mandatory respondent would not be considered eligible for a separate rate unless it responded to the Sections A-D questionnaires. *Id.* at 18, Appx____. Commerce noted in particular that Jinlong did not respond to the agency's Section A questionnaire, which contained questions relevant to government control. *Id.* In the absence of a Section A response, Commerce found that Jinlong had not rebutted

Ct. No. 21-00595

the presumption of government control, although the company had provided data substantively identical to that deemed sufficient to demonstrate other companies' freedom from such control. *Id.* at 18-19, Appx____.

As a result of Commerce's decision, the margin applied to companies that received a separate rate in this proceeding was zero percent. Had Commerce instead averaged the rates determined for Jinlong and Senmao, the rate applied to the separate rate companies would have been 42.57%. AMMWF's Case Brief at 7, Appx____ (citation omitted). Therefore, Commerce's actions eliminated what would have been substantial dumping margins with respect to nearly the entire Chinese multilayered wood flooring industry.

This appeal followed.

## IV.   <u>STANDARD OF REVIEW</u>

This Court must determine whether Commerce's determinations are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). Substantial evidence is "'more than a mere scintilla' of supportive record information." *Altx, Inc. v. United States*, 370 F.3d 1108, 1116 (Fed. Cir.

14

Ct. No. 21-00595

2004) (quoting *Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984)). Rather, "{a} finding is supported by substantial evidence if a reasonable mind might accept the evidence as sufficient to support the finding." *Maverick Tube Corp. v. United States*, 857 F.3d 1353, 1359 (Fed. Cir. 2017) (citing *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The standard of review requires the agency to take into account "whatever in the record fairly detracts" from the evidence adduced in support of the agency's conclusion, *CS Wind Vietnam Co. v. United States*, 832 F.3d 1367, 1373 (Fed. Cir. 2016), and also requires that Commerce grapple with all "important aspect{s} of the problem" before it. *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

Commerce must "provide a 'rational connection between the facts found and the choice made'" and "'articulate a satisfactory explanation for its action.'" *Baroque Timber Indus. (Zhongshan) Co. v. United States*, 971 F. Supp. 2d 1333, 1339-40 (Ct. Int'l Trade 2014) (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962) and *Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1378 (Fed. Cir. 2013)). Thus, the agency must do more than offer

15

conclusory statements of its findings. *See, e.g., Shanghai Foreign Trade Enters. Co. v. United States*, 28 CIT 480, 488, 318 F. Supp. 2d 1339, 1346 (2004) (rejecting conclusory agency explanation as inconsistent with the substantial evidence standard). It must also address the arguments presented to it. *Altx, Inc. v. United States*, 25 CIT 1100, 1103, 167 F. Supp. 2d 1353, 1359 (2001); *see also* 19 U.S.C. § 1677f(i)(3)(A). Overall, an agency's decision is only supported by substantial record evidence if it is reasonable. *See Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1350-51 (Fed. Cir. 2006).

    Commerce's failure to adequately explain its determination not only renders the determination unsupported by substantial evidence, it renders the decision not in accordance with law, given that an inadequately explained decision may be arbitrary. *SKF USA Inc. v. United States*, 263 F.3d 1369, 1378, 1382-83 (Fed. Cir. 2001). For similar reasons, an agency determination grounded in evidentiary or legal sources that are inadequate to support the agency's conclusions is not in accordance with law. *Id.* Further, where an agency's determination ignores relevant statutory or regulatory language, or interprets that language counter to its plain meaning, the

Ct. No. 21-00595

determination is not in accordance with law. *AMS Assocs., Inc. v. United States*, 737 F.3d 1338, 1344 (Fed. Cir. 2013); *Jilin Henghe Pharm. Co. v. United States*, 28 CIT 969, 977-78, 342 F. Supp. 2d 1301, 1309 (2004), *vacated on other grounds*, 123 F. App'x 402 (Fed. Cir. 2005).

## V.  ARGUMENT

Commerce erred in its determination of the margin assigned to companies that the agency did not individually examine, but to which it granted a separate rate. Commerce likewise erred in denying Jinlong separate rate status.

### A.  Commerce Erred in its Determination of the Margin Assigned to Separate-Rate Companies

The Tariff Act of 1930 ("the Act") states that, in determining the antidumping duty margin for non-individually examined respondents in antidumping duty investigations, Commerce will weight-average the margins determined for "individually examined" companies, excluding rates that are zero, *de minimis*, or determined entirely using the facts available. 19 U.S.C. § 1673d(c)(5)(A). Where the individually examined respondents' margins are all zero, *de minimis*, or determined using the facts available, Commerce may use "any reasonable method" to

17

Ct. No. 21-00595

determine the margin for non-individually examined respondents. *Id.* § 1673d(c)(5)(B).[3] The SAA confirms that, in this latter case, the "expected method" is for Commerce to weight-average the margins determined for the individually examined respondents, notwithstanding the fact that they are all zero, *de minimis*, or determined using the facts available. SAA at 873, 1994 U.S.C.C.A.N. at 4201. The SAA further states that Commerce should depart from the "expected method" only if it is not feasible or would not produce a margin "reasonably reflective" of non-selected companies' dumping margins.

In the review at bar, Commerce found that "Jinlong is under review." I&D Memo at 20, Appx____. Indeed, Jinlong was selected as a mandatory respondent. *See generally* Respondent Selection Memo, Appx____. The courts have confirmed that "if a firm is chosen as a mandatory respondent to an investigation, it is 'individually investigated'" for purposes of determining the margin applicable to companies that are not individually examined. *Solianus*, 391 F. Supp.

---

[3]   While the statute applies by its terms to investigations, Commerce applies it in administrative reviews as well. *Albemarle Corp. v. United States*, 821 F.3d 1345, 1352-53 (Fed. Cir. 2016).

Ct. No. 21-00595

3d at 1338-39 (citation omitted); *see also Yangzhou Bestpak*, 716 F.3d at 1377-80 (treating a company that Commerce found ineligible for a separate rate as individually investigated).

Nonetheless, Commerce here did not consider Jinlong's margin when determining the margin for separate-rate companies—while simultaneously stating that it was employing the "expected method." I&D Memo at 20, Appx____. Commerce stated that while Jinlong was "under review," because there was no request for a review of the China-wide entity, Jinlong's margin "is not under consideration for purposes of the expected method." *Id.* Commerce, however, did not explain why the lack of a request for review of the China-wide entity was relevant, given Jinlong's status as an individually investigated company. *Id.* Nor did it explain on what basis it could exclude Jinlong's margin when employing the "expected method," when it was nonetheless an individually investigated company. *Id.* Commerce's conclusory statement that Jinlong's margin was not "under consideration" for purposes of determining the margin for non-selected companies does not comport with its duty to adequately explain and support its determinations, or render lawful and reasonable results.

19

Ct. No. 21-00595

Commerce stated that the methodology it employed here was used in past proceedings, pointing particularly to an administrative review of the antidumping duty order on Chinese tapered roller bearings. *Id.* at 20-21 n.118, Appx____. But the agency's decision in the roller bearings review does not explain or support the agency's methodology. *See* Preliminary Decision Memorandum accompanying *Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, from the People's Republic of China*, 81 Fed. Reg. 45,455 (Dep't Commerce July 14, 2016) (preliminary results, partial rescission of antidumping duty administrative review, and preliminary rescission of new shipper review; 2014-2015). Thus, it cannot rehabilitate Commerce's failure to adequately explain or support its approach here.

Similarly, Commerce's reliance on *YC Rubber Co. (N. Am.) LLC v. United States* does not suffice to explain or support its approach. I&D Memo at 21, Appx____ (citing 487 F. Supp. 3d 1367, 1376 (Ct. Int'l Trade 2020)). That case involved predicate facts similar to those at issue here. *See YC Rubber Co.*, 487 F. Supp 3d at 1371-72. However, no party challenged the agency's treatment of a mandatory respondent that withdrew from participation as not "individually investigated." *Id.*

20

Ct. No. 21-00595

at 1374-76. Rather, the case involved the question of whether Commerce was required to select a replacement mandatory respondent. *See generally id.* Here, AMMWF does not argue (and did not argue below) that Commerce was required to select a replacement mandatory respondent. Rather, AMMWF's challenge is to Commerce's treatment of Jinlong as both "under review" and a "mandatory respondent," but nonetheless not "individually investigated." I&D Memo at 17-20, Appx____; AMMWF's Case Brief at 3-8, Appx____.

Commerce also rejected AMMWF's assertion that *Solianus* indicates that mandatory respondents are individually examined, for purposes of the margin determined for companies that are not mandatory respondents, even if they do not qualify for a separate rate. I&D Memo at 21, Appx____. The agency pointed out that *Solianus* involved a market-economy case in which Commerce selected three mandatory respondents, not two. *Id.* Commerce then stated that "this review involves an NME country where a company may only obtain an individually-calculated margin if it demonstrates its eligibility for a separate rate." *Id.*

Ct. No. 21-00595

Commerce's explanation conflates two separate concepts—that of
whether a company is "individually investigated" and whether it
receives an "individually calculated" margin. The first concept is
directly relevant to the determination of the separate rate here, as
19 U.S.C. § 1673d(c)(5)(A) calls upon Commerce to base the margin for
companies that are not individually examined on the margins
determined for those that are. But consideration of the second concept is
foreclosed, at least where all mandatory respondents receive zero, *de
minimis* or facts available margins. 19 U.S.C. § 1673d(c)(5)(A). In such
situations, the statute plainly calls upon Commerce to include margins
that may not be "individually calculated," such as facts available
margins, when determining the margins for companies that are not
individually examined. *Id.*; *see also* SAA at 873, 1994 U.S.C.C.A.N. at
4201.

Further, while Commerce pointed out that *Solianus* arose from a
market-economy proceeding, the agency failed to recognize that the
*Solianus* court relied on *Yangzhou Bestpak*, an NME case. *Compare*
I&D Memo at 21, Appx____, *with Solianus,* 391 F. Supp. 3d at 1338-39
(discussing *Yangzhou Bestpak*). Thus, there is no legitimate basis to

Ct. No. 21-00595

Commerce's rejection of the *Solianus* court's holding that "if a firm is chosen as a mandatory respondent to an investigation, it is 'individually investigated'" for purposes of determining the margin applicable to companies that are not individually examined. *Solianus*, 391 F. Supp. 3d at 1338-39 (citation omitted).

Commerce is permitted to deviate from the "expected method" under certain circumstances. But Commerce stated here that it was *not* deviating from the "expected method." I&D Memo at 20, Appx____. As such, although its determination of the separate rate was inconsistent with the "expected method," it did not explain why deviation from the "expected method" was justified, *id.* at 20-21, Appx____, or meaningfully address AMMWF's arguments against such deviation. *Compare id.*, *with* AMMWF's Case Brief at 5, 7-8, Appx____, Appx____.

Finally, while Commerce indicated that it used the "expected method" here, the agency did not explain why resort to the "expected method" was necessary at all. Commerce explained that it was not applying an adverse inference to Jinlong, but simply pulling forward the margin for the unreviewed China-wide entity, of which Jinlong was a part. I&D Memo at 20, Appx____. In other words, Commerce did not

23

Ct. No. 21-00595

treat Jinlong as a company that received a margin based on the "facts available" pursuant to 19 U.S.C. § 1677e. *See id.* But the Act states that, in general, the margin for non-selected companies must be the weighted average of the "dumping margins established for exporters and producers individually investigated, excluding any zero and *de minimis* margins, and any margins determined entirely under section 1677e {}." 19 U.S.C. § 1673d(c)(5)(A). Jinlong did not receive a zero or *de minimis* margin. To the extent that its margin was also not "determined entirely under section 1677e," the statute called upon Commerce to use Jinlong's margin alone—given Senmao's zero margin—to determine the margin for non-selected companies.

In sum, Commerce's determination of the margin applied to separate rate companies does not comply with the standard of review. The agency's explanation and conclusion are illogical, ignore applicable statutory requirements, and fail to meaningfully grasp with "important aspect{s} of the problem" before it. *State Farm*, 463 U.S. at 43. The agency failed to meaningfully address pertinent arguments that AMMWF presented, despite having an obligation to do so. *SKF USA Inc.*, 630 F.3d at 1374.

24

Ct. No. 21-00595

This is an important issue for domestic producers. As noted above, as a result of Commerce's decision, the margin applied to companies that received a separate rate in this proceeding was zero percent. Had Commerce instead averaged the rates determined for the two mandatory respondents, as it did in prior reviews and as directed by the statute, the rate would have been 42.57%. AMMWF's Case Brief at 7, Appx____ (citation omitted); *see also 2016-2017 Final Results*, 84 Fed. Reg. at 38,003. Commerce's actions eliminated what would have been substantial dumping margins with respect to nearly the entire Chinese multilayered wood flooring industry, negating any relief for the domestic industry.

## B.   Commerce Erred in Denying Jinlong Separate Rate Status

Commerce's denial of Jinlong's separate rate status was unlawful, inadequately explained, and unreasonable. Commerce denied Jinlong a separate rate despite granting continued separate rate status to other Chinese wood flooring companies that submitted substantively identical data. Commerce's also failed to analyze the affirmative information that Jinlong submitted in support of its separate rate status, or to explain why that data did not rebut the presumption of government control.

Ct. No. 21-00595

Accordingly, Commerce's determination does not say how the agency concluded, based on a reasonable and appropriate assessment of the record evidence, that Jinlong failed to rebut the presumption. This Court should accordingly remand the denial of a separate rate for further consideration.

Jinlong first demonstrated its eligibility for a separate rate in the original investigation. *Investigation Final Results*, 76 Fed. Reg. at 64,321. Jinlong demonstrated its eligibility again in the immediately preceding review. *2017-2018 Final Results*, 85 Fed. Reg. at 78,119. In this review, Jinlong filed a timely, complete separate rate certification about which Commerce asked no supplemental questions. *See* Jinlong's SRC, Appx____; discussion *supra* at 6-7. After Jinlong was subsequently selected as a mandatory respondent, it notified Commerce early in April of 2020 that it was unable to respond to the questionnaires due to COVID-19. *See* Respondent Selection Memo, Appx____; Jinlong's Notice, Appx____. As such, Jinlong did not provide a response to the Section A- D questionnaires.

In denying Jinlong a separate rate, Commerce pointed to language in its initiation notice stating that if a company that filed a separate rate

Ct. No. 21-00595

certification was selected as a mandatory respondent, the company's separate rate status would only be continued if the company responded to Commerce's Sections A-D questionnaires. I&D Memo at 18, Appx____; *Initiation Notice*, 85 Fed. Reg. at 6,897, Appx____. Commerce also used the lack of a Section A response from Jinlong as a basis for denying Jinlong separate rate status. I&D Memo at 18-19, Appx____. These explanations do not adequately support Commerce's determination, or demonstrate that it was reasonable or lawful.

First, Commerce cannot, by the expedient of including language in its initiation notice, free itself from its statutory duty to make reasonable and non-arbitrary decisions and to consider record evidence. *See, e.g.*, 19 U.S.C. § 1516a(b)(1)(B)(i). Indeed, the courts have found that a denial of a separate rate must be rooted in the factual record of a particular case. *See, e.g.*, *Fresh Garlic Producers Ass'n v. United States*, 121 F. Supp. 3d 1313, 1327-1328 (Ct. Int'l Trade 2015). It cannot simply be announced in advance that certain conditions will result in a denial of a separate rate, regardless of what evidence regarding freedom from government control may exist on the record of the relevant proceeding.

Ct. No. 21-00595

Rather, Commerce's decisions must be grounded in "substantial" record evidence. 19 U.S.C. § 1516a(b)(1)(B)(i).

Commerce noted Jinlong's failure to provide a Section A response in explaining its basis for denying Jinlong a separate rate. I&D Memo at 18-19, Appx____. Commerce reasoned that Section A of its questionnaire included questions that, while not posed to all companies seeking continued separate rate status (just mandatory respondents), were nonetheless intended to produce information "necessary" to Commerce's consideration of whether Jinlong was eligible for a separate rate. *Id.* Pointing to *Prime Time Commerce LLC v. United States,* Commerce stated that the courts have found that a mandatory respondent's response to at least Section A of the agency's questionnaire is "necessary" information. *Id.* at 18, 18 n.102, Appx____ (citing 396 F. Supp. 3d 1319, 1332-33 (Ct. Int'l Trade 2019)).

Commerce's explanation is inadequate. Here, Commerce treated a response to its Section A questionnaire as "necessary" to its consideration of Jinlong's separate rate status, despite not treating such information as "necessary" to the consideration of dozens of other companies' separate rate status. Commerce did not adequately explain

28

Ct. No. 21-00595

the basis for this distinct treatment. *Id.* at 17-19, Appx____; *see also* Preliminary Decision Memo at 14, Appx____. Again, Commerce's reliance on the language in its initiation notice was insufficient. Moreover, neither Commerce's final nor its preliminary decision memoranda reflect any assessment of the affirmative record facts contained in Jinlong's separate rate certification. I&D Memo at 17-19, Appx____; *see also* Preliminary Decision Memo at 13-15, Appx____. While Commerce concluded that those facts do not rebut the presumption of government control, it failed to adequately explain why they do not. *See* I&D Memo at 17-19, Appx____; *see also* Preliminary Decision Memo at 13-15, Appx____. Commerce pointed to nothing deficient about the separate rate certification itself. *See* I&D Memo at 17-19, Appx____; *see also* Preliminary Decision Memo at 13-15, Appx____. It did not issue any supplemental questionnaires regarding the certification. It accepted virtually identical data to rebut the presumption of government control when provided by other parties.

Commerce stated that a respondent has the burden of rebutting the presumption of government control. I&D Memo at 18-19, Appx____. AMMWF agrees. But while Commerce stated that without a Section A

29

Ct. No. 21-00595

response, it "could not fully examine the issue of government control" as to Jinlong, it has not adequately explained why the facts of record, inclusive of the separate rate certification, reasonably supported the conclusion that Jinlong has failed to rebut the presumption of government control. *Id.* This lack of adequate explanation is particularly acute given Commerce's treatment of substantively identical separate rate certifications as sufficient to demonstrate other companies' freedom from government control. *Id.*

Commerce's reliance on *Prime Time* is also unavailing. The plaintiff in that case—a non-respondent that imported goods from a respondent company—argued that Commerce had applied an adverse inference in finding the respondent ineligible for a separate rate, inconsistently with the non-respondent's efforts to populate the record with relevant data. *Prime Time*, 396 F. Supp. 3d at 1332-34. While the *Prime Time* court noted Commerce's determination that the respondent was ineligible for a separate rate because it failed to file a Section A response, the court was not called upon to evaluate that finding for conformity with the standard of review. *Id.* Thus, the *Prime Time* court did not make the holding for which Commerce cites the case.

30

Ct. No. 21-00595

Finally, Commerce pointed out that its denial of a separate rate to Jinlong was consistent with past proceedings, specifically its 2017-2018 administrative review of the antidumping duty order on Chinese drawn sinks. I&D Memo at 19, Appx____. However, that case provides no greater explanation or justification for the methodology than Commerce provided in the I&D Memo here. *See* Preliminary Decision Memorandum accompanying *Drawn Stainless Steel Sinks from the People's Republic of China*, 83 Fed. Reg. 67,226 (Dep't Commerce Dec. 28, 2018) (preliminary results of the antidumping duty administrative review, and preliminary determination of no shipments; 2017-2018). Thus, it cannot backstop Commerce's failure to adequately explain or support its approach in this case.

Indeed, the agency has employed a different methodology in other cases. In the 2017-2018 administrative review of the antidumping duty order on Chinese steel nails, the agency faced the same factual scenario that it faced here. Specifically, it received a separate rate certification from a company (Tianjin Universal Machinery Imp. & Exp. Corporation ("Universal")) that it later selected as a mandatory respondent, and which then failed to respond to the agency's questionnaires.

31

Ct. No. 21-00595

Preliminary Decision Memorandum accompanying *Certain Steel Nails from the People's Republic of China*, 84 Fed. Reg. 55,906 (Dep't Commerce Oct. 18, 2019) (preliminary results of the antidumping duty administrative review and preliminary determination of no shipments; 2017-2018) at 3-4, 10.[4] Commerce did not deny Universal a separate rate, notwithstanding its failure to file a Section A response, and the inclusion of language in the relevant initiation notice identical to that cited by Commerce here. *See id.* at 10-12; *see also id.* at 9-10 nn.44-46. Instead, Commerce granted Universal a separate rate, and then applied adverse inferences to determine its margin. *Id.* at 13-14.

Given the circumstances described above, AMMWF respectfully submits that Commerce's treatment of Jinlong as ineligible for separate rate status must be remanded for further consideration. The agency's explanation for denying Jinlong separate rate status is inadequate. Commerce has not explained how the denial comports with statutory

---

[4]   Commerce made no changes to its analysis of Universal's separate rate status in the final results of the review. *See generally Certain Steel Nails from the People's Republic of China*, 85 Fed. Reg. 22,399 (Dep't Commerce Apr. 22, 2020) (final results of antidumping duty administrative review and final determination of no shipments; 2017-2018).

**Ct. No. 21-00595**

requirements. Commerce has not addressed the affirmative record evidence regarding Jinlong's operations, or how that information supports its conclusion. The conclusion is also arbitrary, because Commerce concluded that other companies had rebutted the presumption of government control based on information that was substantively identical to that provided by Jinlong.

Ct. No. 21-00595

## VI.   <u>CONCLUSION</u>

For the foregoing reasons, AMMWF respectfully submits that the Court should remand Commerce's final results in the 2018-2019 administrative review of the antidumping duty order covering Chinese multilayered wood flooring for further consideration.

Respectfully submitted,

<u>/s/ Timothy C. Brightbill</u>
Timothy C. Brightbill, Esq.
Maureen E. Thorson, Esq.
Stephanie M. Bell, Esq.
Tessa V. Capeloto, Esq.
Theodore P. Brackemyre, Esq.

WILEY REIN LLP
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel for Plaintiff,*
*American Manufacturers of*
*Multilayered Wood Flooring*

Dated: May 2, 2022

34

<u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement. The word count for American Manufacturers of Multilayered Wood Flooring's Memorandum in Support of Rule 56.2 Motion for Judgment on the Agency Record, as computed by Wiley Rein LLP's word processing system (Microsoft Word 2021), is 6,029 words.

<u>/s/ Timothy C. Brightbill</u>
(Signature of Attorney)

<u>Timothy C. Brightbill</u>
(Name of Attorney)

<u>American Manufacturers of Multilayered Wood Flooring</u>
(Representative Of)

<u>May 2, 2022</u>
(Date)