**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

| |
|---|
| **AMERICAN MANUFACTURERS OF MULTILAYERED WOOD FLOORING,** |
| **Plaintiff,** |
| **v.** |
| **UNITED STATES,** |
| **Defendant,** |
| **and** |
| **JIANGSU GUYU INTERNATIONAL TRADING CO., LTD.,** *et al.*, |
| **Defendant-Intervenors.** |

**Before: Hon. M. Miller Baker, Judge**

**Court No. 21-00595**

<u>**AMERICAN MANUFACTURERS OF MULTILAYERED WOOD FLOORING'S REPLY BRIEF**</u>

**Timothy C. Brightbill, Esq.**
**Maureen E. Thorson, Esq.**
**Stephanie M. Bell, Esq.**
**Tessa V. Capeloto, Esq.**
**Theodore P. Brackemyre, Esq.**

**WILEY REIN LLP**
**2050 M Street, NW**
**Washington, DC 20036**
**(202) 719-7000**

***Counsel for Plaintiff,***
***American Manufacturers of***
***Multilayered Wood Flooring***

**Dated: August 19, 2022**

**Ct. No. 21-00595**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...............................................................................1

II.   BACKGROUND .................................................................................1

III.  ARGUMENT.......................................................................................6

    A.   Commerce Erred in Determining the Margin for
         Non-Individually Examined Companies................................6

    B.   Commerce Erred in Treating Jinlong as Part of
         the China-Wide Entity..........................................................13

IV.   CONCLUSION .................................................................................21

i

Ct. No. 21-00595

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albemarle Corp. v. United States*,
    821 F.3d 1345 (Fed. Cir. 2016) ............................................................ 3

*Prime Time Commerce LLC v. United States*,
    396 F. Supp. 3d 1319 (Ct. Int'l Trade 2019) ................................. 16, 17

*Sigma Corp. v. United States*,
    117 F.3d 1401 (Fed. Cir. 1997) ........................................................... 1

**Statutes**

19 U.S.C. § 1516a(b)(1)(B)(i) ................................................................. 15

19 U.S.C. § 1673d(c)(5)(A) ............................................................. 3, 7, 11

**Administrative Materials**

*Certain Steel Nails From the People's Republic of China*,
    84 Fed. Reg. 55,906 (Dep't Commerce Oct. 18, 2019) ....................... 18

*Certain Steel Nails From the People's Republic of China*,
    85 Fed. Reg. 22,399 (Dep't Commerce Apr. 22, 2020) ....................... 18

*Multilayered Wood Flooring From the People's Republic of
    China*, 76 Fed. Reg. 64,318, 64,321 (Dep't Commerce
    Oct. 18, 2011) ...................................................................................... 3

*Multilayered Wood Flooring From the People's Republic of
    China*, 84 Fed. Reg. 38,002, 38,003-04 (Dep't Commerce
    Aug. 5, 2019).................................................................................... 12

*Multilayered Wood Flooring From the People's Republic of
    China*, 85 Fed. Reg. 78,118, 78,119 (Dep't Commerce
    Dec. 3, 2020) ....................................................................................... 3

**Ct. No. 21-00595**

## Other Authorities

Uruguay Round Agreements Act, Statement of
    Administrative Action, H.R. Doc. No. 103-316, vol. 1
    (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040...........................3, 5, 8, 10

Ct. No. 21-00595

# GLOSSARY

**AMMWF**

American Manufacturers of Multilayered Wood Flooring

**I&D Memo**

Issues and Decision Memorandum

**Jinlong**

Fusong Jinlong Group

**MLWF**

Multilayered Wood Flooring

**NME**

Non-Market Economy

**SAA**

Statement of Administrative Action

**Senmao**

Jiangsu Senmao Bamboo and Wood Industry Co., Ltd.

**SRA**

Separate Rate Application

**SRC**

Separate Rate Certification

**Universal**

Tianjin Universal Machinery Imp. & Exp. Corporation

**Ct. No. 21-00595**

**U.S.C.C.A.N.**

United States Code Congressional and Administrative News

**Ct. No. 21-00595**

# I.     INTRODUCTION

On behalf of the American Manufacturers of Multilayered Wood Flooring ("AMMWF"), a coalition of domestic producers of wood flooring products, we respectfully submit this reply to the response brief filed by Defendant the United States ("the Government"). *See* Def.'s Br. in Opp'n to Pl.'s R. 56.2 Mot. for J. Upon the Agency R. (July 1, 2022), ECF No. 34 ("Government's Brief ").

# II.    BACKGROUND

This appeal arises from the 2018-2019 administrative review of the antidumping duty order on multilayered wood flooring from the People's Republic of China ("China.") In administrative reviews that involve non-market economy ("NME") countries such as China, the U.S. Department of Commerce ("Commerce") applies a rebuttable presumption that all respondent companies are part of a government-controlled "country-wide" entity. *See, e.g.*, *Sigma Corp. v. United States*, 117 F.3d 1401, 1405 (Fed. Cir. 1997). To overcome this presumption in a particular review, companies that established their freedom from government control in the investigation and/or prior reviews must file what is called a "separate rate certification" or "SRC." *See, e.g.*,

Ct. No. 21-00595

Enforcement & Compliance, U.S. Dep't of Commerce, Separate Rate

Certification for Firms Previously Awarded Separate Rate Status,

available at https://enforcement.trade.gov/nme/sep-rate-files/cert-

20150323/prc-sr-cert-20150323.pdf (last updated Mar. 23, 2015).

Where there are more respondent companies subject to an

administrative review than Commerce can practicably examine, the

agency selects a subset for individual examination.[1] *See, e.g.,*

Preliminary Decision Memorandum accompanying *Multilayered Wood*

*Flooring From the People's Republic of China*, 86 Fed. Reg. 22,016

(Dep't Commerce Apr. 26, 2021) (prelim. results of the antidumping

duty admin. rev., prelim. deter. of no shipments, prelim. successor-in-

interest deter., and rescission of rev., in part; 2018-2019) at 2-3,

P.R. 238, Appx1001-1002 ("Preliminary Memo"). Commerce selected two

companies for individual examination in the 2018-2019 review: Jiangsu

Senmao Bamboo and Wood Industry Co., Ltd. ("Senmao") and the

Fusong Jinlong Group ("Jinlong"). *See, e.g.*, *id.*

---

[1]     The companies selected for individual examination are typically
referred to as "mandatory" respondents.

Ct. No. 21-00595

The Tariff Act of 1930 ("the Act") requires Commerce to determine the margins for companies that are not individually examined by averaging the mandatory respondents' margins, excluding any margins that are zero/*de minimis* or based on 19 U.S.C. § 1677e. 19 U.S.C. § 1673d(c)(5)(A).[2] Where all mandatory respondents receive margins that are zero/*de minimis* or based on 19 U.S.C. § 1677e, Congress has stated that the "expected method" for determining the margin for non-individually examined companies is to average the mandatory respondents' margins. Uruguay Round Agreements Act, Statement of Administrative Action, H.R. Doc. No. 103-316, vol. 1, at 873 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040, 4201 ("SAA").

While Jinlong filed an SRC in 2018-2019 review,[3] it was unable to respond to the agency's questionnaires for mandatory respondents due

---

[2]    While the statute applies by its terms to investigations, Commerce applies it in administrative reviews as well. *Albemarle Corp. v. United States*, 821 F.3d 1345, 1352-53 (Fed. Cir. 2016).

[3]    Jinlong first applied for, and received, a separate rate in the original investigation into Chinese multilayered wood flooring. More recently, it was found eligible for a separate rate in the 2017-2018 review, where it was also individually examined. *See Multilayered Wood Flooring From the People's Republic of China*, 76 Fed. Reg. 64,318, 64,321 (Dep't Commerce Oct. 18, 2011) (final deter. of sales at less than fair value); *Multilayered Wood Flooring From the People's Republic of*

**Ct. No. 21-00595**

to the newly emergent COVID-19 pandemic. Preliminary Memo at 14,

Appx1013; Letter from DeKieffer & Horgan, PLLC to Sec'y Commerce,

re: *Multilayered Wood Flooring from China: Jinlong Notice of Intent Not

to Participate* (Apr. 14, 2020) at 1, P.R. 170, Appx1268. Commerce found

that because Jinlong did not respond to Section A of the agency's

questionnaire for mandatory respondents, it thus failed to rebut the

presumption of government control. Issues and Decision Memorandum

accompanying *Multilayered Wood Flooring From the People's Republic

of China*, 86 Fed. Reg. 59,987 (Dep't Commerce Oct. 29, 2021) (final

results of antidumping duty admin. rev., final successor-in-interest

deter., and final deter. of no shipments; 2018-2019) at 18-19, P.R. 279,

Appx1055-1056 ("I&D Memo"). Reasoning that "no party requested a

review of the China-wide entity," Commerce assigned Jinlong the

85.13% rate previously established for the China-wide entity.

Preliminary Memo at 15, Appx1014. Commerce indicated that, in

assigning Jinlong the China-wide entity rate, it was not determining

---

*China*, 85 Fed. Reg. 78,118, 78,119 (Dep't Commerce Dec. 3, 2020) (final
results of antidumping duty admin. rev. and new shipper rev. and final
deter. of no shipments; 2017-2018).

Ct. No. 21-00595

Jinlong's margin under 19 U.S.C. § 1677e. I&D Memo at 20, Appx1057;
*see also* AMMWF's Mem. in Supp. of R. 56.2 Mot. for J. on the Agency
R. (May 2, 2022), ECF No. 33 at 23-24 ("AMMWF's Opening Brief.")
Meanwhile, Commerce calculated a zero percent margin for Senmao.
*See, e.g.*, Preliminary Memo at 1, Appx1000.

In determining the margin for companies that were not subject to
individual examination, the agency stated that it was applying the
"expected method." I&D Memo at 20, Appx1057. This method calls upon
Commerce to average the mandatory respondents' margins. SAA at 873,
1994 U.S.C.C.A.N. at 4201. However, Commerce assigned non-
individually examined companies the zero percent margin calculated for
Senmao, without considering the margin applied to Jinlong. *See, e.g.*,
Preliminary Decision Memo at 15-16, Appx1014-1015. Commerce
explained that because Jinlong was part of the China-wide entity, "the
only rate under consideration pursuant to the expected method is the
calculated margin for the sole mandatory respondent which established
its eligibility for a separate rate . . . ." I&D Memo at 20, Appx1057.
Nonetheless, while Commerce found that Jinlong was part of an entity

Ct. No. 21-00595

not under review, it stated that Jinlong itself was under review. I&D Memo at 19-20, Appx1056-1057.

## III.  **ARGUMENT**

In its opening brief, AMMWF explained that Commerce erred in determining the margin for non-individually examined companies without reference to the margin assigned to Jinlong and, furthermore, erred in treating Jinlong as part of the China-wide entity. AMMWF's Opening Brief at 17-33. The Government defends Commerce's decision on both counts, while also arguing that the AMMWF failed to exhaust its administrative remedies regarding Commerce's determination to employ the "expected method." Government's Brief at 11-41. As discussed below, the Government's defenses are unpersuasive, and this Court should remand Commerce's determination of the non-examined companies' margin, and its treatment of Jinlong as part of the country-wide entity, for further consideration.

### A.    **Commerce Erred in Determining the Margin for Non-Individually Examined Companies**

In its opening brief, AMMWF noted that Jinlong was a mandatory respondent that Commerce conceded was "under review." AMMWF's Opening Brief at 18. Case law indicates that, even if such a respondent

Ct. No. 21-00595

does not answer Commerce's questionnaires, it remains individually examined for purposes of determining the margin for companies not subject to individual examination. *Id.* at 18-23. In discounting Jinlong's margin when determining the margin for non-individually examined respondents, Commerce thus deviated from the "expected method," and did so without either adequate explanation or addressing AMMWF's arguments against deviation from the method. *Id.* at 23. Further, inasmuch as Jinlong's margin was not determined under 19 U.S.C. § 1677e while Senmao received a zero percent margin, Commerce was required to use Jinlong's margin alone to determine the margin for non-individually examined companies. *Id.* at 23-24; *see also* 19 U.S.C. § 1673d(c)(5)(A).

In its response brief, the Government argues that Commerce appropriately determined the margin applied to non-individually examined companies. Government's Brief at 25-35. The Government contends that Commerce applied the "expected method" to determine this margin, *id.* at 25-29, while deploying its "technical expertise" to take only Senmao's margin into account in the determination. *Id.* at 29-30. The Government argues that Commerce appropriately explained the

Ct. No. 21-00595

reasoning behind this approach, *id.* at 30-32, and that the approach was consistent with both case law and practice. *Id.* at 32-35. Finally, the Government argues that the AMMWF failed to exhaust its remedies regarding whether Commerce appropriately determined to employ the "expected method." *Id.* at 35-41. As explained below, the Government fails to make its case.

The Government begins by arguing that Commerce employed the "expected method" to determine the margin for non-examined companies, while simultaneously conceding that Commerce did not, in fact, use the "expected method" at all. Government's Brief at 25-29. The expected method is for Commerce to average the margins of the mandatory respondents. SAA at 873, 1994 U.S.C.C.A.N. at 4201. Here, those respondents were Senmao and Jinlong; yet Commerce omitted Jinlong's margin from consideration in determining the non-examined companies' margin.

The Government contends that because the Act does not specifically state how Commerce is to determine the margins for non-individually examined companies in NME proceedings, Commerce could reasonably exercise its "technical expertise" to omit Jinlong's margin from

Ct. No. 21-00595

consideration. Government's Brief at 29-30. But in explaining why, the Government only repeats—albeit at greater length—Commerce's baffling assertion that Jinlong, while under individual review, was simultaneously not under review at all, because it was part of the China-wide entity. *Id.* at 30-32; *see also* I&D Memo at 20, Appx1057.

But as AMMWF has previously explained, where a company that is selected as a mandatory respondent, it is "individually examined" for purposes of 19 U.S.C. § 1673d(c)(5). AMMWF's Opening Brief at 18, 21-23 (discussing *Solianus, Inc. v. United States*, 391 F. Supp. 3d 1331 (Ct. Int'l Trade 2019)). Like Commerce, the Government disputes *Solianus's* relevance. Government's Brief at 32-33; I&D Memo at 21, Appx1058. However, the Government offers no meaningful rejoinder to AMMWF's argument that, in dismissing the case's relevance, Commerce conflated two separate concepts—that of whether a company is "individually investigated" and whether it receives an "individually calculated" margin. Government's Brief at 30-32; AMMWF's Brief at 21-22. Further, in arguing that *Solianus's* reliance on *Yangzhou Bestpak* is irrelevant, the Government itself retreats into irrelevancies. Government's Brief at 33.

Ct. No. 21-00595

The Government notes that, unlike the situation in *Yangzhou Bestpak*, Commerce did not determine the margin for non-examined companies in the review at bar by averaging the China-wide rate with a rate calculated for a mandatory respondent. *Id.* That is so, but given that AMMWF has complained of this very fact, it is not the distinguishing factor that the Government makes it out to be. Further, the *Yangzhou Bestpak* Court treated a mandatory respondent as individually examined, even though the respondent was part of the China-wide entity. Jinlong, too, was a mandatory respondent. Preliminary Memo at 3, Appx1002. Commerce conceded that it was "under review." I&D Memo at 20, Appx1057. Accordingly, it was an individually examined company. Because Jinlong was individually examined, its margin should have been taken into consideration under the "expected method," SAA at 873, 1994 U.S.C.C.A.N. at 4201, which is the method that Commerce stated that it applied. I&D Memo at 20, Appx1057.

Further, while Commerce asserted that it was employing the "expected method" to determine the margin for non-individually examined companies, the agency did not explain why resorting to the

Ct. No. 21-00595

"expected method" was necessary at all. AMMWF's Brief at 23-24. The Government devotes several pages of its brief to contending that this particular argument was not exhausted before the agency. Government's Brief at 35-41. While AMMWF did not brief the point below, a proper exception to the exhaustion doctrine applies, as the issue is one of pure law.

The Act stated plainly that Commerce must determine the margin for non-individually examined companies by averaging the mandatory respondents' margins, excluding any margins that are zero/*de minimis* or based on 19 U.S.C. § 1677e. 19 U.S.C. § 1673d(c)(5)(A). Commerce conceded that Jinlong's margin was not based on 19 U.S.C. § 1677e, and that the company was under review. I&D Memo at 20, Appx1057. Jinlong was individually examined per *Solianus* and *Yangzhou Bestpak*. Its margin, unlike Senmao's, was neither *zero* nor de *minimis*. Preliminary Memo at 15, Appx1014. As such, consideration of AMMWF's argument that 19 U.S.C. § 1673d(c)(5)(A) applies requires no further development of the record.

With respect to the substance of AMMWF's argument on this point, and contrary to the Government's assertion, Commerce did not explain

Ct. No. 21-00595

its failure to apply 19 U.S.C. § 1673d(c)(5)(A). Government's Brief at 40-41. The Government only cites Commerce's finding that Jinlong was part of the China-wide entity. *Id.* In other words, the Government adopts Commerce's own conflation of two separate concepts—that of whether a company is "individually investigated" and whether it receives an "individually calculated" margin. AMMWF's Brief at 21-22; I&D Memo at 21, Appx1058.

Finally, it should be noted that the 85.13% rate that Jinlong received as part of the China-wide entity is identical with the rate that Commerce has previously applied under 19 U.S.C. § 1677e to mandatory respondents that are found free of government control, but are otherwise uncooperative. *See* Preliminary Memo at 15, Appx1014; *Multilayered Wood Flooring From the People's Republic of China*, 84 Fed. Reg. 38,002, 38,003-04 (Dep't Commerce Aug. 5, 2019) (final results of antidumping duty admin. rev. and final deter. of no shipments; 2016-2017). Had Commerce determined Jinlong's rate under 19 U.S.C. § 1677e, the expected method would have produced a margin of 42.57% for non-examined companies, exactly as in the 2016-2017 administrative review. *Id.* But instead, due to Commerce's exclusion of

Ct. No. 21-00595

Jinlong's margin from consideration, the margin applied to companies that received a separate rate in this proceeding was zero percent. Commerce's unreasonable and inadequately explained treatment of Jinlong thus eliminated what would have been substantial margins as to a large swath of the Chinese flooring industry.

### B. Commerce Erred in Treating Jinlong as Part of the China-Wide Entity

Jinlong submitted an SRC in the review, containing information substantively identical to that which Commerce found sufficient to demonstrate other companies' freedom from government control. AMMWF's Brief at 25. But rather than analyze the affirmative record evidence regarding Jinlong's freedom from government control, Commerce denied the company a separate rate due to its inability to file a Section A questionnaire response. *Id.* at 26-30. Commerce's treatment of Jinlong was unreasonable, inadequately explained, and inconsistent with its treatment of a similarly situated respondent in another proceeding. *Id.* at 26-32.

The Government argues that Commerce appropriately found that Jinlong had failed to rebut the presumption of government control. Government's Brief at 11-24. The Government claims that Commerce

13

Ct. No. 21-00595

put Jinlong on notice that, as a mandatory respondent, it would receive a separate rate only if it responded to Commerce's initial questionnaire for mandatory respondents. *Id.* at 12-14. The Government contends that the information solicited from mandatory respondents in Commerce's Section A questionnaire is necessary to the analysis of government control. *Id.* at 13-17. The Government asserts that Commerce appropriately explained why failing to respond to the mandatory respondent questionnaire would result in denial of a separate rate. *Id.* at 19-20. Finally, the Government argues that Commerce acted consistently with its practice in denying Jinlong a separate rate. *Id.* at 21-24.

The Government begins by stating that Commerce notified the companies subject to review, including Jinlong, that the agency would deny a separate rate to mandatory respondents that failed to respond to the agency's questionnaires, notwithstanding the filing of an SRC. Government's Brief at 12-13. But as AMMWF has pointed out, notifying parties of an intended action does not establish on its own that the action is lawful or appropriate. AMMWF's Brief at 27-28. Commerce is under a duty to make reasonable and non-arbitrary decisions and to

14

**Ct. No. 21-00595**

consider all of the record evidence before it. *See, e.g.,* 19 U.S.C.

§ 1516a(b)(1)(B)(i). It cannot free itself from these duties by announcing

its disinclination to perform them.

The Government next repeats Commerce's argument that Section A

of the mandatory respondent questionnaire solicits information that is

necessary to the agency's consideration of government control.

Government's Brief at 13-17; *see also* I&D Memo at 17-19, Appx1054-

1056. But Commerce did not explain why that information was

"necessary," particularly when it did not find a Section A response

necessary to analyzing government control for the non-individually

examined companies' in this review. I&D Memo at 17-19, Appx1054-

1056. The Government points out that Commerce regularly issues

supplemental questionnaires to companies filing SRCs, a fact indicating

that an SRC is not automatically sufficient grounds to grant a separate

rate. Government's Brief at 17-18. But here, Commerce pointed to

nothing deficient in Jinlong's SRC, and issued no supplemental

questionnaire regarding that SRC, even as the agency issued

supplemental questionnaires regarding other respondents' SRCs. *See*

I&D Memo at 17-19, Appx1054-1056; *see also* Preliminary Memo

Ct. No. 21-00595

at 13-15, Appx1012-1014; AMMWF's Opening Brief at 7 n.2. As such,
the mere fact that Commerce can, and does, issue supplemental
questionnaires regarding SRCs does not support the Government's
position here.

Like Commerce, the Government points to *Prime Time Commerce
LLC v. United States*, 396 F. Supp. 3d 1319 (Ct. Int'l Trade 2019) as
supportive of the agency's treatment of Jinlong as part of the China-
wide entity. Government's Brief at 15-17; I&D Memo at 18. The
Government argues that, in *Prime Time*, the court specifically held that
Commerce reasonably denies a separate rate to a mandatory
respondent that files an SRC,[4] but does not respond to Section A of the
questionnaire. Government's Brief at 15-17. But as AMWWF pointed
out, while the plaintiff-importer in *Prime Time* challenged the
assignment of the China-wide rate to its foreign supplier, the plaintiff
did not raise the question that AMMWF raises here.

---

[4]      *Prime Time* arose from an antidumping investigation. In an
antidumping duty investigation, the equivalent of the SRC is the
Separate Rate Application, or SRA. *See, e.g.*, *Prime Time*, 396 F. Supp.
3d at 1323.

Ct. No. 21-00595

Specifically, the *Prime Time* plaintiff did not argue that Commerce erred in finding an SRC (or SRA, given that the case involved an investigation) an insufficient basis on which to evaluate freedom from government control. Instead, it argued that Commerce had applied an adverse inference in finding the respondent ineligible for a separate rate, inconsistently with the importer's efforts to populate the record with relevant data. *Prime Time*, 396 F. Supp. 3d at 1332-34. The court disagreed that an adverse inference had been applied. *Id.* And while it noted Commerce's determination that the respondent was ineligible for a separate rate because it failed to file a Section A response, the court was not called upon to evaluate that finding for conformity with the standard of review. *Id.* Here, however, the question of whether Commerce acted reasonably in denying Jinlong a separate rate is squarely before the court.

Importantly, as the Government concedes, Commerce does not uniformly treat a response to Section A of the mandatory respondents' questionnaire as "necessary" to the analysis of government control. Government's Brief at 21-23. In the 2017-2018 administrative review of the antidumping duty order on Chinese steel nails, Commerce granted a

separate rate to a company that declined to submit a Section A
questionnaire response after being selected as a mandatory respondent.
AMMWF's Brief at 31-32; *see also* Preliminary Decision Memorandum
accompanying *Certain Steel Nails From the People's Republic of China*,
84 Fed. Reg. 55,906 (Dep't Commerce Oct. 18, 2019) (prelim. results of
the antidumping duty admin. rev. and prelim. deter. of no shipments;
2017-2018) at 3-4, 8-10 ("*Nails Review*").[5] The Government downplays
this precedent, noting that Commerce selected mandatory respondents
in the *Nails Review* through its sampling methodology, rather than
designating the largest shippers as mandatory respondents (as it did in
the case on appeal). Government's Brief at 21-23. The Government
explains that when selecting respondents pursuant to the sampling
methodology, the agency determines whether companies are eligible for
a separate rate prior to selecting mandatory respondents. *Id.* at 22.

   This is a distinction without a difference. In the *Nails Review*,
Commerce determined that Tianjin Universal Machinery Imp. & Exp.

---

[5]     Commerce's analysis was unchanged in the final results. *See
generally Certain Steel Nails From the People's Republic of China*, 85
Fed. Reg. 22,399 (Dep't Commerce Apr. 22, 2020) (final results of
antidumping duty admin. rev. and final deter. of no shipments; 2017-
2018).

**Ct. No. 21-00595**

Corporation ("Universal") was eligible for a separate rate based solely on the company's filing of an SRC. *Nails Review* at 10. Here, Jinlong filed an SRC, the very data deemed sufficient to demonstrate Universal's eligibility for a separate rate, notwithstanding Universal's subsequent failure to respond to the agency's questionnaire for mandatory respondents. Rather than demonstrate the reasonableness of Commerce's treatment of Jinlong, the *Nails Review* exposes the arbitrary nature of that treatment.

The Government next argues that Commerce reasonably explained why it denied Jinlong a separate rate; namely, that Commerce lacked sufficient data to analyze Jinlong's freedom from government control in the absence of a Section A response. Government's Brief at 19-20. But this defense is not responsive to the AMMWF's argument that Commerce failed to discuss or analyze the affirmative record evidence regarding Jinlong's freedom from government control. AMMWF's Brief at 29-30. Rather, the Government simply repeats Commerce's inadequate explanation. *Compare* Government's Brief at 19-20 *with* I&D Memo at 18-19, Appx1055-1056. The explanation is also

Ct. No. 21-00595

inadequate given that Commerce found SRCs adequate to analyze other respondents' freedom from government control in the review.

Finally, the Government does not persuade that Commerce acted congruently with its practice. Government's Brief at 20-24. In support of its claim, the Government cites an administrative review postdating the review at bar. *Id.* at 23-24. Such a review, however, cannot establish the existence of a practice at the time that Commerce made the decision on appeal. And while the Government attempts to distinguish the Nails Review, that attempt only underscores the unreasonableness of Commerce's action here, as explained above. *Id.* at 21-23; *see* discussion *supra* at 17-19.

As also noted above, by denying Jinlong a separate rate, Commerce did not subject that company to a different margin than it would have received had it been found eligible for a separate rate, given Jinlong's failure to respond to the mandatory respondent questionnaires. *See* discussion *supra* at 12-13. But the issue is not academic. Commerce's conclusion that Jinlong was not eligible for a separate rate formed the basis for its refusal to consider the company's margin when determining the margin for non-individually examined companies. Even if the court

Ct. No. 21-00595

does not find that refusal to be inconsistent with the standard of review in its own right, Commerce's denial of Jinlong's separate rate status remains inconsistent with the standard of review. As discussed above and in AMMWF's opening brief, Commerce failed to consider the affirmative record evidence regarding Jinlong's freedom from government control, did not adequately explain or support its disparate treatment of Jinlong and other companies that filed SRCs, and acted arbitrarily in denying Jinlong a separate rate.

## IV.   <u>CONCLUSION</u>

For the reasons detailed here and in its opening brief, AMMWF respectfully submits that the Court should remand the final results in the 2018-2019 administrative review of the antidumping duty order covering Chinese multilayered wood flooring for further consideration.

**Ct. No. 21-00595**

Respectfully submitted,

*/s/ Timothy C. Brightbill*
Timothy C. Brightbill, Esq.
Maureen E. Thorson, Esq.
Stephanie M. Bell, Esq.
Tessa V. Capeloto, Esq.
Theodore P. Brackemyre, Esq.

**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

Counsel for Plaintiff,
American Manufacturers of
Multilayered Wood Flooring

Dated: August 19, 2022

<u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement. The word count for American Manufacturers of Multilayered Wood Flooring's Reply Brief, as computed by Wiley Rein LLP's word processing system (Microsoft Word 2021), is 3,773 words.


*<u>/s/ Timothy C. Brightbill</u>*
(Signature of Attorney)

<u>Timothy C. Brightbill</u>
(Name of Attorney)

<u>American Manufacturers of Multilayered Wood Flooring</u>
(Representative Of)

<u>August 19, 2022</u>
(Date)