# UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:         THE HONORABLE M. MILLER BAKER, JUDGE

|  |  |
|---|---|
| AMERICAN MANUFACTURERS OF MULTILAYERED WOOD FLOORING,<br><br>         Plaintiff,<br><br>         v.<br><br>UNITED STATES,<br><br>         Defendant,<br><br>JIANGSU GUYU INTERNATIONAL TRADING CO., LTD., et al.,<br><br>         Defendant-Intervenors. | Court No. 21-00595 |

## DEFENDANT'S RESPONSE TO DEFENDANT-INTERVENOR'S COMMENTS ON COMMERCE'S REMAND REDETERMINATION

                                        BRIAN M. BOYNTON
                                        Principal Deputy Assistant Attorney General

                                        PATRICIA M. MCCARTHY
                                        Director

                                        TARA K. HOGAN
                                        Assistant Director

| OF COUNSEL: | BRENDAN JORDAN<br>Trial Attorney |
|---|---|
| ALEXANDER FRIED<br>Office of the Chief Counsel<br>for Trade Enforcement and<br>United States Department of<br>Commerce<br>Washington, D.C. | Commercial Litigation Branch<br>Civil Division<br>Department of Justice<br>P.O. Box 480<br>Washington, D.C. 20044<br>Tel: (202) 616-0342 |
| November 6, 2022 | Attorneys for Defendant |

# TABLE OF CONTENTS

BACKGROUND ........................................................................................ 2

ARGUMENT ............................................................................................. 7

    I.    Standard Of Review ................................................................ 7

    II.   The Court Should Sustain Commerce's Remand Redetermination ........................................................................ 7

          **a.** Commerce Correctly Declined to Revisit Its Prior Separate Rate Denial .................................................................... 9

          **b.** Commerce's Remand Redetermination is Supported by Substantial Evidence and in Accordance with Law ........... 9

CONCLUSION ........................................................................................14

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                   **Page(s)**

*Albemarle Corp. v. United States*,
   821 F.3d 1345 (Fed. Cir. 2016) ......................................................................... 9, 11

*Bosun Tools Co. v. United States*,
   No. 2021-1930, 2022 WL 94172 (Fed. Cir. Jan. 10, 2022) ............ 6, 9, 10

*Consol. Edison Co. v. NLRB*,
   305 U.S. 197 (1938) ............................................................................................. 7

*Consolo v. Fed. Mar. Comm'n*,
   383 U.S. 607 (1966) ............................................................................................. 7

*Linyi Chengen IV v. United States*,
   609 F. Supp. 3d 1392 (Ct. Int'l Trade 2022) .................................... 12, 13

*MacLean-Fogg Co. v. United States*,
   100 F. Supp. 3d 1349 (Ct. Int'l Trade 2015) ............................................ 7

*Nippon Steel Corp. v. United States*,
   458 F.3d 1345 (Fed. Cir. 2006) ............................................................. 7

*PrimeSource Bldg. Prods. v. United States*,
   581 F. Supp. 3d. 1331 (Ct. Int'l Trade 2022) ................................. *passim*

*SMA Surfaces, Inc. v. United States*,
   No. 21-00399, 2023 WL 6142127 (Ct. Int'l Trade Sept. 20, 2023) ....... 13

*Wyeth v. Kappos*,
   591 F.3d 1364 (Fed. Cir. 2010) ........................................................... 12

*Yangzhou Bestpak Gifts & Crafts Co. v. United States*,
   716 F.3d 1370 (Fed. Cir. 2013) ........................................................... 10

**Statutes**

19 U.S.C. § 1516a(b) .............................................................................................. 7

19 U.S.C. § 1673d(c) ....................................................................................... 5, 9, 11

19 U.S.C. § 1677e(a) .............................................................................................. 4

19 U.S.C. § 1677e(b) .............................................................................................. 4

19 U.S.C. § 1677e(c) .............................................................................................. 5

Statement of Administrative Action accompanying the Uruguay Round
   Agreements Act,
   H.R. Doc. No. 103-316 at 873 (1995) .............................................................. 5, 6, 11


**Federal Register**

*Multilayered Wood Flooring from the People's Republic of China: Final Results of Antidumping Duty Administrative Review, Final Determination of No Shipments, and Partial Recission; 2018-2019*,
   86 Fed. Reg. 59,987 (Dep't of Commerce Oct. 29, 2021) .......................... 2

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
BEFORE THE HONORABLE M. MILLER BAKER, JUDGE

_____
)
AMERICAN MANUFACTURERS )
OF )
MULTILAYERED WOOD )
FLOORING, )
 )
      Plaintiff, )
 )
   v. )   Court No. 21-000595
 )
UNITED STATES, )
 )
      Defendant, )
 )
JIANGSU GUYU INTERNATIONAL )
TRADING CO., LTD., SINO-MAPLE )
(JIANGSU) CO., LTD., KINGMAN )
FLOORS CO., LTD., KEMIAN )
WOOD INDUSTRY (KUNSHAN) )
CO., LTD., HUZHOU SUNERGY )
WORLD TRADE CO., LTD., )
JIANGSU SIMBAFLOORING CO., )
LTD., DONGTAI FUAN UNIVERSAL )
DYNAMICS, LLC, AND ZHEJIANG )
FUERJIA WOODEN CO., LTD. )
 )
      Defendant-Intervenors. )
_____)

**DEFENDANT'S RESPONSE TO DEFENDANT-INTERVENOR'S COMMENTS ON COMMERCE'S REMAND REDETERMINATION**

1

Defendant, the United States, respectfully submits this response to the comments filed by defendant intervenors Jiangsu Guyu International Trading Co., Ltd.; Sino-Maple (Jiangsu) Co., Ltd.; Kingman Floors Co., Ltd.; Kemian Wood Industry (Kunshan) Co., Ltd.; Huzhou Sunergy World Trade Co., Ltd.; Jiangsu Simba Flooring Co., Ltd.; Dongtai Fuan Universal Dynamics, LLC; and Zhejiang Fuerjia Wooden Co., Ltd. (collectively, Jiangsu Guyu) concerning the Department of Commerce's () remand redetermination in this matter. *See* Final Results of Redetermination Pursuant to Court Remand P.R.R. 4 (Remand Redetermination).

## BACKGROUND

In the final results of the 2018-2019 administrative review, Commerce investigated mandatory respondents Fusong Jinlong Group (Jinlong) and Senmao Bamboo and Wood Industry Co., Ltd. (Senmao). *Multilayered Wood Flooring from the People's Republic of China: Final Results of Antidumping Duty Administrative Review, Final Determination of No Shipments, and Partial Recission; 2018-2019*, 86 Fed. Reg. 59,987 (Dep't of Commerce Oct. 29, 2021), and accompanying Issues and Decision Memorandum. While Senmao participated in the

review and received a zero rate, Jinlong notified Commerce that it did not intend to participate. P.R. 279; *see* also Remand Redetermination at 2-3. Although Jinlong submitted a separate rate certification, Commerce determined the Jinlong did not establish eligibility for a separate rate because it failed to respond to Commerce's Section A, which includes questions relevant to separate rate eligibility. *Id.* Commerce explained that this result was consistent with its initiation notice and practice, and found that Jinlong was part of the China-wide entity. *Id.* (citing initiation notice). Because Senmao's rate was zero, Commerce assigned a zero percent weighted-average dumping margin to all separate rate companies not individually examined in the review. *Id.*

The Court remanded to Commerce to reconsider whether mandatory respondent Jinlong was eligible for a separate rate based on its separate rate certification, notwithstanding its failure to respond to Commerce's antidumping questionnaire. ECF No. 51. The Court held that, because Commerce accepted separate rate certifications for other non-individually examined respondents as sufficient evidence to grant

3

separate rates, this disparate treatment of similarly situated respondents is arbitrary and capricious. *Id.*

In its remand redetermination, pursuant to the Court's order, Commerce reconsidered Jinlong's separate rate eligibility despite its failure to respond to Commerce's antidumping questionnaire. Under respectful protest, Commerce evaluated the separate rate certification on the record for Jinlong and found it eligible for a separate rate for the sole purpose of calculating the separate rate for respondents that continue to have entries enjoined for this period of review. Remand Redetermination at 4.[1]

Relying on 19 U.S.C. § 1677e(a)(2)(A), (B), and (C), Commerce then applied facts available in determining Jinlong's rate upon finding that Jinlong withheld information requested by Commerce, failed to provide the requested information in the form and manner requested, and thus, significantly impeded the proceeding. *Id.* at 6. Additionally, because Jinlong failed to cooperate by not acting to the best of its ability in responding to Commerce's information requests during the review, Commerce applied an adverse inference in selecting from the facts

---

[1] Jinlong is not a party to the litigation and, as such, its rate was not subject to change in the remand. *See* Remand Redetermination at 2.

4

available.  *Id.* at 7 (citing 19 U.S.C. § 1677e(b)).  On this basis, Commerce assigned Jinlong the highest calculated rate for any respondent from a completed segment of the proceeding – 85.13 percent.  *Id.* at 9.  Because this rate was applied in a prior segment of the proceeding, Commerce did not corroborate it.  *Id.*; 19 U.S.C. § 1677e(c)(2).

When the estimated weighted-average dumping margins for selected companies are all zero, *de minimis*, or based entirely on facts available, 19 U.S.C. § 1673d(c)(5)(B) permits Commerce to "use any reasonable method to establish the estimated all-others rate for exporters and producers not individually investigated, including averaging the estimated weight average dumping margins determined for the exporters and producers individually investigated."  In the SAA, Congress stated that when "the dumping margins for all the exporters and producers that are individually investigated are determined entirely on the basis of the facts available are zero or *de minimis* . . . {t}he expected method in such cases will be to weight-average the zero and the *de minimis* margins and margins determined pursuant to the facts available, provided that volume data is available."  *See* Statement

5

of Administrative Action accompanying the Uruguay Round Agreements Act, H.R. Doc. No. 103-316 at 873 (1995) (SAA). The SAA further provides that "if this method is not feasible or if it results in an average that would not be reasonably reflective of potential dumping margins for non-investigated exporters or producers, Commerce may use other reasonable means." *Id.*

As a result of Commerce's remand redetermination, the two individually examined respondents, Senmao and Jinlong, had margins that were either zero or based entirely on facts otherwise available. Remand Redetermination at 11. Because Jinlong did not respond to the antidumping questionnaire, the quantity and value of its sales during the period of review is missing from the record. *Id.* Therefore, it was not feasible for Commerce to calculate a weight average of the rates for the mandatory respondents. *Id.* Thus, in accordance with the expected method, Commerce calculated the separate rate for all eligible non-examined respondents by taking the simple average of the individually

investigated respondents' margins, which resulted in anantidumping duty margin of 42.57%.[2] Jiangsu Guyu contest this rate.

## ARGUMENT

### I. Standard Of Review

In remand proceedings, the Court will sustain Commerce's determinations if they are "in accordance with the remand order, are supported by substantial evidence, and are otherwise in accordance with law." *MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)). "Substantial evidence" connotes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Substantial evidence may be "less than the weight of the evidence" and "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by

---

[2] While the SAA specifies that a weight average of individually investigated respondents is the expected method, both the Federal Circuit and this Court have referred to use of a simple average as the expected method, where volume is unavailable. *Bosun Tools Co. v. United States*, No. 2021-1930, 2022 WL 94172, at 2 (Fed. Cir. Jan. 10, 2022) (Affirming *Bosun Tools Co. v. U.S.*, 493 F. Supp. 3d 1351, Clip. Op. 21-23 (CIT 2021). ; *PrimeSource Bldg. Prods. v. U.S.*, 581 F. Supp. 3d.1331, n.8 (CIT 2022).

substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (citations omitted). Thus, a party challenging a determination under the substantial evidence standard "has chosen a course with a high barrier to reversal." *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1352 (Fed. Cir. 2006) (citation omitted).

## II. The Court Should Sustain Commerce's Remand Redetermination

Jiangsu Guyu argues that Commerce should have continued to deny Jinlong a separate rate on remand. Alternatively, Jiangsu Guyu *et al* argue that Commerce should have deviated from the "expected method" in recalculating the separate rate.

While Jiangsu Guyu *et al.* assert that Commerce "provided insufficient evidence" as to why the expected method "is fair and equitable" to the separate rate companies, ECF No. 61 (Def. Int. Brief), that is not the standard. Rather, "non-selected respondents bear the burden of providing evidence that the results of the expected method would not reasonably reflect the potential dumping margins of the non-selected respondents", not Commerce. *PrimeSource Bldg. Prods. v. United States*, 581 F. Supp. 3d. 1331, 1341 (Ct. Int'l Trade 2022). Jiangsu Guyu *et al.* have failed to identify any record evidence to

8

support their assertion that the expected method is not reasonably reflective of their margins and instead argue the method itself is simply unfair. Def. Int. Brief at 9-10. This argument runs counter to the statute, which authorizes Commerce to average margins that are zero and based entirely on facts available in determining a rate for companies not individually examined. 19 U.S.C. § 1673d(c)(5)(B); *Bosun Tools*, 2022 WL 94172.[3] Because Jiangsu Guyu *et al.* failed to articulate why the expected method has resulted in an unreasonable margin, the Court should sustain Commerce's remand results.

### a. Commerce Correctly Declined to Revisit Its Prior Separate Rate Denial

Jiangsu Guyu *et al.* argue that Commerce's previous denial of a separate rate to Jinlong was lawful. Def. Int. Brief at 5. As explained in the remand redetermination, the Court has already held that not relying on Jinlong's separate rate certification to determine eligibility for a separate rate is arbitrary and capricious. ECF No. 51; Remand

---

[3] Although this case is unpublished, the Court of International Trade has found it persuasive in similar situations. *See PrimeSource Bldg. Prods.*, 581 F. Supp. 3d. at n.7 ("Although *Bosun* is an unpublished opinion, as discussed herein, this court finds the opinion helpful to its analysis because the reasoning is consistent with and builds on the Federal Circuit's prior reasoning in *Albemarle* and *Changzhou Hawd* and is otherwise persuasive.)

9

Redetermination at 5. While Jiangsu Guyu *et al.* may disagree with this decision, Commerce complied with the Court's remand order by considering Jinlong's separate rate certification to determine the company's separate rate eligibility on remand.

      b. Commerce's Remand Redetermination is Supported by Substantial Evidence and in Accordance with Law

Jiangsu Guyu *et al.* argue that the expected method produced a margin that was "not reasonably reflective of potential dumping margins" for non-investigated exporters or producers. Def. Int. Brief at 8 (citing SAA). In particular, Jiangsu Guyu *et al.* argue that Commerce did not calculate a "fair and equitable" separate rate because it used an AFA rate in its calculation for cooperative non-investigated companies. *Id.* at 9, 10-11. Jiangsu Guyu *et. al.* also argue that there is no evidentiary support indicating that the recalculated rate is accurate. *Id.* at 9-11. These arguments find no support in the law or record. Because Commerce's methodology for calculating the separate rate on remand is supported by substantial evidence and in accordance with law, the Court should sustain Commerce's remand redetermination.

Jiangsu Guyu *et al.* argue that it is unfair to apply an AFA rate to fully cooperative separate rate companies. Def. Int. Brief at 9-10.

10

However, the Court of Appeals for the Federal Circuit squarely rejected this argument in *Bosun Tools* where it found that 19 U.S.C. § 1673d(c)(5)(B) and the SAA "*explicitly* allow Commerce to factor both de minimis and *AFA rates* into the calculation methodology." 2022 WL 94172 at 4 (quoting *Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370 (Fed. Cir. 2013) (emphasis added in original)); *see also PrimeSource Bldg. Prods. v. United States*, 581 F. Supp. 3d at n.9. Thus, the incorporation of an AFA rate assigned to a mandatory respondent into the separate rate is not automatically unreasonable. Rather, as specified in the SAA, it is "expected" that Commerce will include such a rate absent evidence that doing so would "not be reasonably reflective of potential dumping margins" for separate rate respondents. SAA, H.R. Doc. No. 103-316 at 873 (1995).

In *Albemarle*, the Federal Circuit held that the "very fact that the statute contemplates using data from the largest volume exporters suggests an assumption that those data can be viewed as representative of all exporters" absent evidence to the contrary. *See Albemarle Corp. v. United States*, 821 F.3d 1345, 1353 (Fed. Cir. 2016). Commerce found in the remand redetermination that there was no record basis to

11

conclude that dumping by the non-examined separate rate respondents is different from the mandatory respondents. *See* Remand Redetermination at 15. Although Jiangsu Guyu *et al.* believe that the rate that Commerce applied in its remand redetermination is unfair, they do not identify – as the law requires – evidence suggesting that their level of dumping is different.

Instead, Jiangsu Guyu *et al.* ask the Court to misapply the relevant legal framework. Jiangsu Guyu *et al.* claim that Commerce provided insufficient evidence as to how the expected method is fair and equitable for the separate rate companies. They reason that Commerce should have deviated from the expected method because it results in Commerce averaging an AFA rate with a zero rate. In other words, Jiangsu Guyu *et al.* place the burden on Commerce to justify its use of the expected method without citing evidence that the rate assigned on remand is unreasonable. This is not a reason to deviate from what Congress envisioned as the default methodology in this scenario. *Wyeth v. Kappos*, 591 F.3d 1364, 1370 (Fed. Cir. 2010) ("{T}his court does not take upon itself the role of correcting all statutory inequities, even if it

could. In the end, the law has put a policy in effect that this court must enforce, not criticize or correct.").

Jiangsu Guyu *et al.* rely on *Linyi Chengen IV v. United States* to argue that it is Commerce's fault there is sparse information in the record. 609 F. Supp. 3d 1392, 1277-78 (Ct. Int'l Trade 2022). However, this case is distinguishable. In *Linyi Chengen IV*, the Court remanded to Commerce for using the expected method *when the separate rate companies pointed to other evidence on the record* that showed that the rate was unreasonable. *Id.* at 1403–04 (discussing additional invoices that undermined the AFA rate). In this case, Jiangsu Guyu *et. al.* point to no evidence that would undermine the reasonability of the expected method rate.[4] Thus, unlike *Linyi Chengen IV*, there is no record evidence that undermines the resulting rate.

Lastly, Jiangsu Guyu *et al.* argue that Commerce's separate rate determination "fails to satisfy the purpose of AFA" because it penalizes cooperative companies and minimizes the deterrent impact of an AFA

---

[4] Jiangsu Guyu *et. al.* has waived any arguments made before the agency not included in their brief. *See SMA Surfaces, Inc. v. United States*, No. 21-00399, 2023 WL 6142127, at *3 (Ct. Int'l Trade Sept. 20, 2023) ("Even if an argument has been raised to the agency, the failure to raise that argument before the court on remand generally constitutes waiver.")

13

rate by "dragging the all-others rate higher." *See* Def. Int. Br. at 10. However, Commerce did not apply an adverse inference to a cooperative party; rather, Commerce calculated the rate for separate rate respondents in accordance with the relevant statute. Moreover, because Commerce determined the separate rate in accordance with the statute, Jiangsu Guyu *et al.*'s hypothetical arguments regarding deterrence effects are misplaced.

Therefore, because "the non-selected respondents bear the burden of providing evidence that the results of the expected method would not reasonably reflect the potential dumping margins of the non-selected respondents," and Jiangsu Guyu *et. al.* make no arguments outside of critiquing the expected method itself, the Court should sustain Commerce's Remand Determination. *PrimeSource Bldg. Prods* 581 F. Supp. 3d at 1341.

## CONCLUSION

For these reasons, the Court should sustain Commerce's remand retermination and enter judgment for the United States.

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
BEFORE THE HONORABLE M. MILLER BAKER, JUDGE

| | |
|---|---|
| _____ ) <br> AMERICAN MANUFACTURERS ) <br> OF ) <br> MULTILAYERED WOOD ) <br> FLOORING, ) <br> ) <br>       Plaintiff, ) <br> ) <br>    v. ) <br> ) <br> UNITED STATES, ) <br> ) <br>       Defendant, ) <br> ) <br> JIANGSU GUYU INTERNATIONAL ) <br> TRADING CO., LTD., SINO-MAPLE ) <br> (JIANGSU) CO., LTD., KINGMAN ) <br> FLOORS CO., LTD., KEMIAN ) <br> WOOD INDUSTRY (KUNSHAN) ) <br> CO., LTD., HUZHOU SUNERGY ) <br> WORLD TRADE CO., LTD., ) <br> JIANGSU SIMBAFLOORING CO., ) <br> LTD., DONGTAI FUAN UNIVERSAL ) <br> DYNAMICS, LLC, AND ZHEJIANG ) <br> FUERJIA WOODEN CO., LTD. ) <br> ) <br>       Defendant-Intervenors. ) <br> _____ ) | Court No. 21-000595 |

**<u>ORDER</u>**

15

Upon consideration of the Department of Commerce's final results of redetermination pursuant to remand, defendant's response in support thereto, and all other pertinent papers, it is hereby

ORDERED that the remand results are sustained in their entirety; and further

ORDERED that final judgment is entered in favor of the United States.

Dated:_____, 2023

New York, NY        M. MILLER BAKER, JUDGE

16