# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: THE HONORABLE M. MILLER BAKER, JUDGE

| | |
|---|---|
| AMERICAN MANUFACTURERS OF MULTILAYERED WOOD FLOORING,<br><br>*Plaintiff,*<br><br>v.<br><br>UNITED STATES,<br><br>*Defendant,*<br><br>and,<br><br>JIANGSU GUYU INTERNATIONAL TRADING CO., LTD., SINO-MAPLE (JIANGSU) CO., LTD., KINGMAN FLOORS CO., LTD., KEMIAN WOOD INDUSTRY (KUNSHAN) CO., LTD., HUZHOU SUNERGY WORLD TRADE CO., LTD., JIANGSU SIMBA FLOORING CO., LTD., DONGTAI FUAN UNIVERSAL DYNAMICS, LLC, AND ZHEJIANG FUERJIA WOODEN CO., LTD.,<br><br>*Defendant-Intervenors.* | Before: Hon. M. Miller Baker, Judge<br>Ct. No. 21-00595 |

## **DEFENDANT-INTERVENORS' COMMENTS IN OPPOSITION TO REMAND RESULTS**

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................... 1

II. SUMMARY OF ARGUMENT ....................................................... 1

III. STANDARD OF REVIEW ............................................................ 2

IV. ARGUMENT ................................................................................. 5

    a.    Commerce's Final Determination was Not
           Arbitrary and Capricious ......................................................... 5

    b.    Commerce Improperly Recalculated the All-
           Others Rate ............................................................................... 7

V. CONCLUSION ............................................................................ 11

# TABLE OF AUTHORITIES

**CASES**

*Changzhou Wujin Fine Chem. Factory Co. v. United States*, 701 F.3d 1367, 1374 (Fed. Cir. 2012) ...................................................... 3

*Dongtai Peak Honey Indus. Co. v. United States*, 971 F. Supp. 2d 1234, 1239 (Ct. Int'l Trade 2014) .......................................... 4

*F.lli De Cecco Di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1032 (Fed. Cir. 2000) .......................................... 10

*Gerald Metals, Inc. v. United States*, 132 F.3d 716, 720 (Fed. Cir. 1997) ...................................................................................... 3

*Hartford Fire Ins. Co. v. United States*, 772 F.3d 1281, 1286 (Fed. Cir. 2014) .............................................................................. 4

*Jiangsu Jiasheng Photovoltaic Tech. Co. v. United States*, 28 F. Supp. 3d 1317, 1323 (Ct. Int'l Trade 2014) .......................................... 4

*Koyo Seiko Co., Ltd. v. United States*, 36 F.3d 1565, 1573 (Fed. Cir. 1994) .............................................................................. 8

*Linyi Chengen IV v. United States*, 609 F. Supp. 3d 1392, 1277-78 (Ct. Int'l Trade 2022) ...................................................... 11

*Mid Continent Nail Corp. v. United States*, 846 F.3d 1364, 1372 (Fed. Cir. 2017) ...................................................................... 3

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) ...................................................................... 5

*Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1379 (Fed. Cir. 2003) .............................................................................. 3

*NTN Bearing Corp. v. United States*, 74 F.3d 1204, 1207-08 (Fed. Cir. 1995) .............................................................................. 3

*Pakfood Pub. Co. v. United States*, 724 F. Supp. 2d 1327,
1337 (Ct. Int'l Trade 2010) ................................................................... 4

*Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1147-
48 (Fed. Cir. 2011) ................................................................................ 4

*Timken U.S. Corp. v. United States*, 421 F.3d 1350, 1355
(Fed. Cir. 2005) ..................................................................................... 4

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951) ................... 3

*Yangzhou Bestpack Gifts & Crafts Co., Ltd. v. United States*,
716 F.3d 1370, 1379 (Fed. Circ. 2013) ................................................. 9

*Zhejiang DunAn Hetian Metal Co. v. United States*, 652 F.3d
1333, 1340 (Fed. Cir. 2011) .................................................................. 3

## **STATUTES**

19 U.S.C. §1516a(b)(1)(B)(i) ..................................................................... 2

## **OTHER AUTHORITIES**

Uruguay Round Statement of Administrative Action, H.R. Doc. No. 103-316,
VOL. 1 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040 ............................. 10

# GLOSSARY

**AFA**

Adverse Facts Available

**AMMWF**

American Manufacturers of Multilayered Wood Flooring

**Commerce**

U.S. Department of Commerce

**H.R.**

U.S. House of Representatives

**Jiangsu Guyu et al.** or **Defendant-Intervenors**

Jiangsu Guyu International Trading Co., Ltd.; Sino-Maple (Jiangsu) Co., Ltd.; Kingman Floors Co., Ltd.; Kemian Wood Industry (Kunshan) Co., Ltd.; Huzhou Sunergy World Trade Co., Ltd.; Jiangsu Simba Flooring Co., Ltd.; Dongtai Fuan Universal Dynamics, LLC; and Zhejiang Fuerjia Wooden Co., Ltd.

**Jinlong**

Fusong Jinlong Group

**Remand Results**

Court Remand Order

**SAA**

Statement of Administrative Action

**U.S.C.C.A.N.**

United States Code Congressional and Administrative News

## I. INTRODUCTION

On behalf of Jiangsu Guyu International Trading Co., Ltd.; Sino-Maple (Jiangsu) Co., Ltd.; Kingman Floors Co., Ltd.; Kemian Wood Industry (Kunshan) Co., Ltd.; Huzhou Sunergy World Trade Co., Ltd.; Jiangsu Simba Flooring Co., Ltd.; Dongtai Fuan Universal Dynamics, LLC; and Zhejiang Fuerjia Wooden Co., Ltd. (collectively, "Jiangsu Guyu *et al.*" or "Defendant-Intervenors"), and pursuant to this Court's September 6, 2023 Scheduling Order, ECF No. 60, we submit Jiangsu Guyu *et al.*'s comments in opposition to the Redetermination Pursuant to Court Remand Order ("Remand Results") filed by the U.S. Department of Commerce ("Commerce") on August 8, 2023, ECF No. 57.

## II. SUMMARY OF ARGUMENT

In the Remand Results, Commerce assigned, under protest, a separate rate based on adverse facts available ("AFA") to Fusong Jinlong Group ("Jinlong"). Commerce then recalculated the rate for all other separate companies, such as Jiangsu Guyu *et al.*, using the AFA rate assigned to Jinlong. Jiangsu Guyu *et al.* disagree with these results.

Jiangsu Guyu *et al.* respectfully disagree with this Court's finding that Commerce's previous denial of a separate rate to Jinlong was

1

arbitrary and capricious. Instead, Jiangsu Guyu *et al.* maintain that Commerce's final determination at the administrative level was lawful and supported by substantial evidence.

Even when Commerce applies a separate rate to Jinlong in its Remand Results, Jiangsu Guyu *et al.* argue that Commerce should not have recalculated the all-others rate in such a manner that penalizes the other separate rate companies. Instead, Commerce should have exercised its discretion to deviate from the expected method to exempt all other separate rate companies from the injurious effect of Jinlong's AFA rate.

## III. <u>STANDARD OF REVIEW</u>

The standard of review, as set forth in 19 U.S.C. §1516a(b)(1)(B)(i), requires the Court to examine whether the determinations, findings or conclusions of Commerce were "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. §1516a(b)(1)(B)(i).

The substantial evidence standard requires Commerce to base its determination upon "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Zhejiang DunAn*

*Hetian Metal Co. v. United States*, 652 F.3d 1333, 1340 (Fed. Cir. 2011) (quoting *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1379 (Fed. Cir. 2003)). This standard "requires more than mere assertion of 'evidence which in and of itself justified {the determination}, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn.'" *Gerald Metals, Inc. v. United States*, 132 F.3d 716, 720 (Fed. Cir. 1997) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). The existence of substantial evidence must be determined in view of the record as a whole, including "whatever in the record {that} fairly detracts from its weight." *Id*.

Commerce acts unlawfully if it abuses its discretion or acts arbitrarily. *See, e.g., Mid Continent Nail Corp. v. United States*, 846 F.3d 1364, 1372 (Fed. Cir. 2017) ("Commerce's decision will {also} be set aside if it is arbitrary and capricious." (alteration in original) (quoting *Changzhou Wujin Fine Chem. Factory Co. v. United States*, 701 F.3d 1367, 1374 (Fed. Cir. 2012))); *NTN Bearing Corp. v. United States*, 74 F.3d 1204, 1207-08 (Fed. Cir. 1995) (remanding where Commerce's refusal to accept corrective information constituted an abuse of discretion); *Pakfood Pub. Co. v. United States*, 724 F. Supp. 2d 1327,

1337 (Ct. Int'l Trade 2010) ("{W}here an agency is afforded a measure of discretion in administering a statute, the exercise of that discretion is not in accordance with law if it is arbitrary . . . ."). The Court has explained that "{a}n abuse of discretion occurs where the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence or represent an unreasonable judgment in weighing relevant factors." *Jiangsu Jiasheng Photovoltaic Tech. Co. v. United States*, 28 F. Supp. 3d 1317, 1323 (Ct. Int'l Trade 2014) (quoting *Dongtai Peak Honey Indus. Co. v. United States*, 971 F. Supp. 2d 1234, 1239 (Ct. Int'l Trade 2014)). "{A} clear error of judgment occurs when an action is 'arbitrary, fanciful, or clearly unreasonable.'" *Hartford Fire Ins. Co. v. United States*, 772 F.3d 1281, 1286 (Fed. Cir. 2014) (quoting *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1147-48 (Fed. Cir. 2011)). The obligation to avoid arbitrary action requires Commerce to engage in reasoned and evenhanded decision-making. *See Timken U.S. Corp. v. United States*, 421 F.3d 1350, 1355 (Fed. Cir. 2005) ("{T}he agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." (alteration in

original) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983))).

IV. **ARGUMENT**

   a. **Commerce's Final Determination was Not Arbitrary and Capricious**

Jiangsu Guyu *et al.* respectfully disagree with this Court's finding that Commerce's denial of a separate rate to Jinlong was arbitrary and capricious. Instead, Jiangsu Guyu *et al.* maintain that Commerce's final determination at the administrative level was lawful and supported by substantial evidence. *See* Jiangsu Guyu *et al.* Comments on Draft Remand Results, PRR 3 at 2–3, Appx1324–1325.

Commerce's prior decision to deny a separate rate for Jinlong was supported by the statute and its established practice. Jiangsu Guyu *et al.* contend that Jinlong's selection as a mandatory respondent sufficiently changes the situation such that it was not similarly situated to other separate rate companies. Jiangsu Guyu *et al.* support the distinctions Commerce previously drew between the use of Section A Questionnaires for mandatory respondents and the separate rate applications for nonmandatory respondents. *See* Defendant's Supplemental Brief in Opposition to Plaintiff's Motion, ECF 38 at 22–

24. Elimination of this distinction improperly erodes the questionnaire process, established by statute.

Further, Commerce's determination was adequately explained and supported by substantial evidence. Jinlong did not participate as a mandatory respondent. *See* Jinlong's Letter of Intent to Not Participate. PR 170, Appx1268. Commerce adequately explained that Jinlong failed to rebut the presumption of government control. *See* Defendant's Supplemental Brief in Opposition to Plaintiff's Motion, ECF 38 at 12–21. As noted in Defendant's prior brief, ECF 38, Commerce identified gaps in the record and justified its treatment of Jinlong as part of the China-wide entity. *See* Defendant's Supplemental Brief in Opposition to Plaintiff's Motion, ECF 38 at 12–21.

As a result, Jiangsu Guyu *et al.* maintain that Commerce's prior decision to deny a separate rate to Jinlong was both lawful and supported by substantial evidence. For these same reasons, Jiangsu Guyu *et al.* disagree with Commerce's application of separate rate to Jinlong in the Remand Results, which was made under respectful protest. Remand Results, ECF 57 at 5.

### b. Commerce Improperly Recalculated the All-Others Rate

Just as Commerce deviated from its established practice by assigning a separate rate to Jinlong, *see* Remand Results, ECF 57 at 4–5, so should it deviate from the expected method in recalculating the all-others rate.

Without prejudice to Jiangsu Guyu *et al.*'s prior argument disputing the application of a separate rate to Jinlong, Jiangsu Guyu *et al.* recognize that application of such rate to Jinlong is the reality of Commerce's Remand Results. With respect to these Remand Results, Jiangsu Guyu *et al.* argue that Commerce's use of Jinlong's AFA rate in the recalculation of the all-others rate is *prima facie* injurious to Defendant-Intervenors, contrary to the purpose of AFA, and should be reversed.

Commerce erred by declining to deviate from the "expected method" in calculating rates. Instead, Commerce mechanically recalculated the all-others rate, over objections by Jiangsu Guyu *et al.* in its comments on Commerce's Draft Remand Results, and in spite of its various obligations discussed below. *See* Jiangsu Guyu *et al.* Comments on Draft Remand Results, PRR 3 at 3–5, Appx1325–1327.

Commerce's discretion to deviate from the "expected methodology" stems from the Uruguay Round Statement of Administrative Action ("SAA"), which permits deviation from the expected method of margin calculations in certain circumstances. Commerce's recalculation of the rate as applied to non-examined respondents in its Remand Results produced a margin that was "not { } reasonably reflective of potential dumping margins" for non-investigated exporters or producers. SAA, H.R. Doc. No. 103-316 (1994) *reprinted in* 1994 U.S.C.C.A.N. 4040, 4201. On this basis, and in furtherance of the obligations discussed below, Commerce should have deviated from the expected method and declined to apply the punitive, and protested, AFA margin to the other cooperative separate rate respondents, such as Jiangsu Guyu *et al.*, as permitted by the SAA.

While the statute and Commerce's regulations do not address the establishment of a rate to be applied to individual respondents, case law provides that Commerce has an obligation to calculate rates in a manner that is "fair and equitable." *Koyo Seiko Co., Ltd. v. United States*, 36 F.3d 1565, 1573 (Fed. Cir. 1994) ("We begin by noting that one of the purposes of the antidumping laws is to calculate antidumping

8

duties on a fair and equitable basis."). Yet, it flouted this obligation in the Remand Results by applying the AFA rate for Jinlong to its recalculation for all other separate rate companies. Commerce reached this AFA rate for Jinlong only under respectful protest and provided insufficient evidence as to how application of the protested AFA rate is fair and equitable to the calculation for other separate rate companies.

Moreover, the Department has a duty to determine dumping margins as "accurately as possible." *Yangzhou Bestpack Gifts & Crafts Co., Ltd. v. United States*, 716 F.3d 1370, 1379 (Fed. Circ. 2013) ("An overriding purpose of Commerce's administration of antidumping laws is to calculate dumping margins as accurately as possible."). There is no evidentiary support on the record that the recalculated rate of 42.57% for all other separate rate companies is accurate. Instead, it bases the recalculated all-others rate on an AFA rate, which Commerce, itself, reached only under protest. Commerce applied a rote methodology to recalculate the all-others rate, despite Jiangsu Guyu *et al.*'s request to the contrary, rather than exercising its discretion to deviate from the expected method. Application of this mechanical process, however, failed to satisfy Commerce's obligation to calculate results as

9

"accurately as possible" and to calculate rates in a "fair and equitable" manner.

Commerce's application of Jinlong's AFA rate to recalculate the all-others rate also fails to satisfy the purpose of AFA. The purpose of AFA is to incentivize cooperation by respondents, not to impose unjustly injurious results. *F.lli De Cecco Di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1032 (Fed. Cir. 2000) ("{T}he purpose of section 1677e(b) is to provide respondents with an incentive to cooperate, not to impose punitive, aberrational, or uncorroborated margins."). Separate rate companies such as Jiangsu Guyu *et al*. have no influence over the participation of other mandatory respondents. Further, assigning mandatory respondents who refuse to cooperate with the investigation a separate rate hinders the effectiveness of AFA to induce cooperation because it (1) allows the mandatory respondent to escape the higher country-wide margin, even if it receives an AFA rate, and (2) simultaneously minimizes the impact of the AFA rate by dragging the all-others rate higher. In practice, this mitigates the competitive impact of an AFA-rate on the non-cooperating entity and destroys the incentive to cooperate. This result is a perversion of the

AFA statute's purpose to incentivize cooperation and, thus, should be reversed.

The cooperative separate rate companies should not be penalized for the selected mandatory respondent's refusal to cooperate. As the Court noted in *Linyi Chengen IV*, Commerce created its own problem when it selected only two mandatory respondents, which resulted in sparse information on the record to support its assertions regarding the potential dumping margins of the separate rate respondents. *See Linyi Chengen IV v. United States*, 609 F. Supp. 3d 1392, 1277-78 (Ct. Int'l Trade 2022). Here, Commerce's Remand Results improperly punish cooperative separate rate respondents and are contrary to Commerce's obligations as established by the courts.

Based on the foregoing, Jiangsu Guyu *et al.* assert that Commerce's recalculation of the all-others rate in its Remand Results is not supported by substantial evidence, undermines that purpose of AFA, and is inconsistent with obligations established by the courts.

V.  **CONCLUSION**

The application of AFA rates to Jinlong and the resulting recalculation of rates for all-other separate rate companies are not

consistent with the law and the facts of record. Despite the remedial

purpose of the dumping law, Commerce has wielded it in a manner that

is unduly punitive. We respectfully request that the Court further

remand this case to Commerce so that the agency may reconsider its

recalculation of the separate rate for cooperating entities.

                                        Respectfully submitted,

                                        <u>/s/ Mark Ludwikowski</u>
                                        Mark Ludwikowski
                                        Kelsey Christensen
                                        Sally Alghazali*

*Counsel to Jiangsu Guyu International Trading Co., Ltd.; Sino-Maple (Jiangsu) Co., Ltd.; Kingman Floors Co., Ltd.; Kemian Wood Industry (Kunshan) Co., Ltd.; Huzhou Sunergy World Trade Co., Ltd.; Jiangsu Simba Flooring Co., Ltd.; Dongtai Fuan Universal Dynamics, LLC; and Zhejiang Fuerjia Wooden Co., Ltd.*

October 5, 2023

---

\* Admitted to Minnesota Bar; practice limited to Federal International Trade Matters pursuant to D.C. Bar Rule 49(c)(2).

# CERTIFICATE OF COMPLIANCE

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this submission complies with the word limitation requirement. The word count for this submission, as computed by Clark Hill's word processing system Microsoft Office Professional, is <u>2,109</u> words.

<u>/s/ Mark Ludwikowski</u>
Mark Ludwikowski

*Counsel to Jiangsu Guyu International Trading Co., Ltd.; Sino-Maple (Jiangsu) Co., Ltd.; Kingman Floors Co., Ltd.; Kemian Wood Industry (Kunshan) Co., Ltd.; Huzhou Sunergy World Trade Co., Ltd.; Jiangsu Simba Flooring Co., Ltd.; Dongtai Fuan Universal Dynamics, LLC; and Zhejiang Fuerjia Wooden Co., Ltd.*

October 5, 2023