IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| AMERICAN MANUFACTURERS OF MULTILAYERED WOOD FLOORING,<br><br>  Plaintiff,<br><br>  v.<br><br>UNITED STATES,<br><br>  Defendant,<br><br>  and<br><br>JIANGSU GUYU INTERNATIONAL TRADING CO., LTD., *et al.*,<br><br>  Defendant-Intervenors. | Before: Hon. M. Miller Baker, Judge<br><br>Court No. 21-00595 |

## AMERICAN MANUFACTURERS OF MULTILAYERED WOOD FLOORING'S COMMENTS IN SUPPORT OF THE REMAND RESULTS

                                            **Timothy C. Brightbill, Esq.**
                                            **Maureen E. Thorson, Esq.**
                                            **Stephanie M. Bell, Esq.**
                                            **Tessa V. Capeloto, Esq.**
                                            **Theodore P. Brackemyre, Esq.**

                                            **WILEY REIN LLP**
                                            **2050 M Street, NW**
                                            **Washington, DC 20036**
                                            **(202) 719-7000**

                                            *Counsel for Plaintiff,*
                                            *American Manufacturers of*
                                            *Multilayered Wood Flooring*

**Dated: November 21, 2023**

## TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................ 1

II. BACKGROUND ................................................................................. 1

III. ARGUMENT ...................................................................................... 3

    A.    Commerce Appropriately Found Jinlong Eligible for Separate Rate Status .......................................................... 4

    B.    Commerce Appropriately Determined the Separate Rate on Remand ................................................................... 5

IV. CONCLUSION ................................................................................. 10

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Albemarle Corp. v. United States*,
 821 F.3d 1345 (Fed. Cir. 2016) ......................................................... 7, 8

*Bosun Tools Co. v. United States*,
 No. 21-1929, 21-1930, 2022 U.S. Appx LEXIS 624
 (Fed. Cir. Jan. 10, 2022) ........................................................................ 8

*Koyo Seiko Co. v. United States*,
 36 F.3d 1565 (Fed. Cir. 1994) .................................................................. 6

*Linyi Chengen Imp. & Exp. Co. v. United States*,
 609 F. Supp. 3d 1392 (Ct. Int'l Trade 2022) ................................... 8, 10

*PrimeSource Bldg. Prods. v. United States*,
 581 F. Supp. 3d 1331 (Ct. Int'l Trade 2022) ................................... 8, 10

*Yangzhou Bestpak Gifts & Crafts Co. v. United States*,
 716 F.3d 1370 (Fed. Cir. 2013) ......................................................... 8, 9

**Statutes**

19 U.S.C. § 1673d(c)(5) ................................................................................ 7

**Administrative Materials**

*Multilayered Wood Flooring from the People's Republic of
 China*, 84 Fed. Reg. 38,002 (Dep't Commerce Aug. 5,
 2019) ..................................................................................................... 10

**Other Authorities**

Uruguay Round Agreements Act, H.R. Doc. No. 103-316,
 vol. 1 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040 ......................... 5, 7

# GLOSSARY

**AMMWF**

American Manufacturers of Multilayered Wood Flooring

**CAFC**

Court of Appeals for the Federal Circuit

**I&D Memo**

Issues and Decision Memorandum

**Jinlong**

Fusong Jinlong Group

**SAA**

Statement of Administrative Action

**Senmao**

Jiangsu Senmao Bamboo and Wood Industry Co., Ltd.

**SRC**

Separate Rate Certification

**U.S.C.C.A.N.**

United States Code Congressional and Administrative News

Ct. No. 21-00595

## I.    INTRODUCTION

On behalf of the American Manufacturers of Multilayered Wood Flooring ("AMMWF"), a coalition of domestic producers of wood flooring products, we respectfully submit these comments in support of the August 8, 2023 remand results filed by the U.S. Department of Commerce ("DOC") in this proceeding, and in response to the October 5, 2023 comments filed by Defendant-Intervenors Jiangsu Guyu International Trading Co., Ltd.; Sino-Maple (Jiangsu) Co., Ltd.; Kingman Floors Co., Ltd.; Kemian Wood Industry (Kunshan) Co., Ltd.; Huzhou Sunergy World Trade Co., Ltd.; Jiangsu Simba Flooring Co., Ltd.; Dongtai Fuan Universal Dynamics, LLC; and Zhejiang Fuerjia Wooden Co., Ltd. (collectively "Intervenors"). *See Final Results of Redetermination Pursuant to Remand Order* (Aug. 8, 2023), ECF No. 57-1 ("Remand Results"); Def.-Ints' Comments in Opp'n to Remand Results (Oct. 5, 2023), ECF No. 61 ("Intervenors' Comments").

## II.    BACKGROUND

Commerce's remand results arise from AMMWF's appeal of the 2018-2019 administrative review of the antidumping duty order on multilayered wood flooring from the People's Republic of China

1

("China"). *See Multilayered Wood Flooring from the People's Republic of China*, 86 Fed. Reg. 59,987 (Dep't Commerce Oct. 29, 2021) (final results of antidumping duty admin. rev., final successor-in-interest deter., and final deter. of no shipments; 2018-2019), P.R. 280, Appx1071-1074 ("Final Results") and accompanying Issues and Decision Memorandum, P.R. 279, Appx1038-1070 ("I&D Memo").

Commerce selected two Chinese companies for individual examination in the review: Fusong Jinlong Group ("Jinlong") and Senmao Bamboo and Wood Industry Co., Ltd. ("Senmao"). *See* Remand Results at 2-3. In its original final results, Commerce calculated a zero percent margin for Senmao and found that Jinlong was part of the China-wide entity, applying a margin of 85.13 percent. *Id.* at 3. The agency then assigned Senmao's zero percent margin to non-individually examined companies that the agency found eligible for a separate rate. *Id.*

AMMWF appealed Commerce's determination that Jinlong was ineligible for a separate rate, as well as the rate applied to separate rate respondents. *See, e.g.*, AMMWF's Mem. in Supp. of Rule 56.2 Mot. for J. on the Agency Rec. (May 2, 2022), ECF No. 33 ("AMMWF's 56.2 Brief").

2

The Court subsequently remanded Commerce's treatment of Jinlong as ineligible for a separate rate as arbitrary and capricious. Order (Mar. 21, 2023), ECF No. 51 ("Remand Order").

Commerce issued draft remand results on June 9, 2023, in which it found Jinlong eligible for a separate rate, but applied an adverse inference to determine its margin. Remand Results at 2. The agency also recalculated the margin for non-individually examined separate rate companies by averaging Senmao's zero margin with Jinlong's adverse margin. *Id.* at 2, 10-11. After receiving comments in support of the draft results from AMMWF, and comments in opposition from Intervenors, Commerce continued to find Jinlong eligible for a separate rate, to determine its margin based on adverse inferences, and to assign separate rate companies the average of Senmao's zero and Jinlong's adverse margins. *Id.* at 17.

### III. ARGUMENT

Intervenors challenge Commerce's remand results on two grounds. Frist, they briefly argue that Commerce's treatment of Jinlong as eligible for a separate rate is arbitrary and capricious. Intervenors' Comments at 5-6. Intervenors also argue that the agency improperly

3

recalculated the separate rate. *Id.* at 7-11. Commerce's remand results, however, are lawful and appropriate, and should be affirmed by the Court.

   A.  **Commerce Appropriately Found Jinlong Eligible for Separate Rate Status**

Intervenors begin by disagreeing with the Court's finding that Commerce acted arbitrarily and capriciously in denying Jinlong a separate rate. *Id.* at 5. They claim that Commerce's original treatment of the company as ineligible for such a rate was statutorily sound and consistent with agency practice. *Id.* at 5-6. They also claim that the agency's original treatment of Jinlong was adequately explained and supported by substantial evidence.

As explained by AMMWF in its pre-remand briefs, however, Commerce's denial of a separate rate to Jinlong was inconsistent with the standard of review. AMMWF's 56.2 Brief at 25-33. The Court agreed that the agency's treatment was arbitrary and capricious, and remanded on that basis. Remand Order at 1. On remand, Commerce re-evaluated Jinlong's separate rate certification ("SRC") and found that the company had rebutted the presumption of government control, like other companies that filed SRCs in the review. Remand Results at 5.

Intervenors do not argue that Jinlong's SRC was deficient in comparison with the SRCs filed by other companies that were granted separate rate status. *See* Intervenors' Comments at 5-6. They merely assert that Commerce's original determination to deny Jinlong a separate rate was sound. Given the Court's finding to the contrary, however, the Court should uphold Commerce's treatment of Jinlong as eligible for a separate rate.

B. **Commerce Appropriately Determined the Separate Rate on Remand**

Congress has stated that, where all mandatory respondents receive margins that are zero/*de minimis* or based entirely on the facts available, the "expected method" for determining any non-individually examined companies' margins will be to average the mandatory respondents' margins, unless doing so is "not feasible" or would produce a result that is not "reasonably reflective of potential dumping margins." *See, e.g.*, Remand Results at 11, quoting Statement of Administrative Action accompanying the Uruguay Round Agreements Act, H.R. Doc. No. 103-316, vol. 1, at 873 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040, 4201. On remand, Commerce redetermined the margin for non-individually examined separate rate companies

consistently with the "expected method," by averaging the zero percent margin it calculated for Senmao with Jinlong's 85.13 percent adverse margin. Remand Results at 10-11, 17.

Intervenors argue that Commerce should have deviated from the "expected method" to determine the margin for non-individually examined companies. Intervenors' Comments at 7. They claim that the "expected method" does not produce a "fair and equitable" result in this case. *Id.* at 8 (quoting *Koyo Seiko Co. v. United States*, 36 F.3d 1565, 1573 (Fed. Cir. 1994)). They claim that there is no record evidence to demonstrate that the recalculated separate rate is accurate as to separate rate companies. *Id.* at 9. Finally, they argue that the recalculated rate fails to fulfill the purpose of adverse inferences and unduly punishes Intervenors for Jinlong's behavior, over which they had no control. *Id.* at 10-11.

These arguments are unconvincing. While Intervenors argue that it was inherently unfair for Commerce to rely in part on an adverse rate in determining the non-examined companies' margins, such a position cannot be squared with Congress's expressed expectation that Commerce do just that. As the Court of Appeals for the Federal Circuit

("CAFC") has explained, one "cannot contend" that the methodology that "Congress has unmistakably explained . . . is, in fact, preferred" is unreasonable *ab initio*. *Albemarle Corp. v. United States*, 821 F.3d 1345, 1354 (Fed. Cir. 2016). Further, while *Albemarle* involved a situation in which all mandatory respondents receive zero/*de minimis* margins, *see generally id.*, both the relevant statutory language and Congress's explanation in the SAA apply equally to situations in which individually examined companies receive a mixture of zero/*de minimis* and adverse rates. 19 U.S.C. § 1673d(c)(5); *see also* SAA at 873, 1994 U.S.C.C.A.N. at 4201. The statute accordingly does not authorize deviation from the "expected method" simply because one of the individually examined companies' rates is adverse.

Similarly, any argument that the 42.57 percent separate rate on remand is unreasonable because it attributes Jinlong's noncooperation to other companies rings hollow. When it enacted 19 U.S.C. § 1673d(c)(5), Congress both understood and expected that non-individually examined companies would be assigned margins based on other companies' behavior, including margins derived in whole or in part from adverse inferences The application of rates based on adverse

inferences to non-selected respondents is a necessary corollary of how the statute is written, and not a sign that Commerce has been unfair or punitive. *See, e.g., Bosun Tools Co. v. United States*, No. 21-1929, 21-1930, 2022 U.S. Appx LEXIS 624 (Fed. Cir. Jan. 10, 2022).[1]

Further, although they claim that the 42.57 percent rate is unfair and punitive as applied to them, Intervenors point to no concrete data establishing that this is so. They do not argue, for example, point to evidence that suggests that Jinlong is unrepresentative of non-individually examined companies. *See PrimeSource Bldg. Prods. v. United States*, 581 F. Supp. 3d 1331, 1337-43 (Ct. Int'l Trade 2022) (sustaining use of expected method where plaintiff separate rate respondents did not demonstrate that the mandatory respondents were unrepresentative of all exporters); *see also Albemarle*, 821 F.33 at 1353 (noting that the mandatory respondents, as the largest exporters, are assumed to be "representative of all exporters.")

Finally, while Intervenors rely on *Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1379 (Fed. Cir. 2013) and *Linyi*

---

[1] This opinion is nonprecedential; AMMWF cites it not as binding precedent, but as persuasive authority given the arguments raised by the appellants in the case.

*Chengen Import & Export Co. v. United States*, 609 F. Supp. 3d 1392 (Ct. Int'l Trade 2022) for the proposition that the separate rate on remand is unreasonable, both cases are factually distinguishable.

In *Bestpak*, the CAFC remanded Commerce's decision to assign, as the separate rate, the average of a zero and adverse rates determined for the two mandatory respondents. *Bestpak*, 716 F.3d at 1375, 1378. However, in *Bestpak,* the mandatory respondent that received an adverse rate was also found to be government controlled. *Id.* at 1379. In remanding, the CAFC noted that Commerce's reliance on an adverse rate to determine the separate rate was reasonable in principle, but found that the record did not suggest that separate rate companies' dumping behavior reflected that of government-controlled companies. *See id.* at 1378-79. In this case, of course, Jinlong has been determined on remand not to be government controlled, so this issue does not arise.

Relatedly, the *Bestpak* Court found that the 123.83 percent separate rate was unreasonably high due, in part, to the lack of information to suggest that it approximated non-government-controlled companies' dumping behavior. *Id.* at 1379-80. By contrast, the 42.57 percent rate is the same that was accorded to separate rate companies in the 2016-

9

2017 review, based on margins determined for mandatory respondents that were not found to be government-controlled. *See Multilayered Wood Flooring from the People's Republic of China*, 84 Fed. Reg. 38,002, 38,003-04 (Dep't Commerce Aug. 5, 2019) (final results of antidumping duty admin. rev. and final deter. of no shipments; 2016-2017).

*Linyi Chengen* is also distinguishable. Intervenors cite the case to chide Commerce for not having selected additional mandatory respondents. Intervenors' Comments at 11. But Intervenors do not allege that any of them sought mandatory respondent status, or even voluntary respondent status. *Id.* As this Court has found, it is not Commerce's burden to justify reliance on the expected method. Rather, parties seeking a departure from that method bear the burden of showing that the method is unreasonable, including by showing that they took steps to submit affirmative information to show that the expected method produced a rate that was unreasonable as applied to them. *PrimeSource*, 581 F. Supp. 3d at 1341; *see also id.* at 1344.

## IV. <u>CONCLUSION</u>

As detailed above, the Court should affirm Commerce's determinations on remand that Jinlong is eligible for a separate rate

and the agency's recalculation of the separate rate using the expected method.

Respectfully submitted,

*/s/ Timothy C. Brightbill*
Timothy C. Brightbill, Esq.
Maureen E. Thorson, Esq.
Stephanie M. Bell, Esq.
Tessa V. Capeloto, Esq.
Theodore P. Brackemyre, Esq.

**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel for Plaintiff,*
*American Manufacturers of*
*Multilayered Wood Flooring*

Dated: November 21, 2023

Ct. No. 21-00595

CERTIFICATE OF COMPLIANCE

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement. The word count for American Manufacturers of Multilayered Wood Flooring's Comments in Support of the Remand Results, as computed by Wiley Rein LLP's word processing system (Microsoft Word 2021), is 1,868 words.

*/s/ Timothy C. Brightbill*
(Signature of Attorney)

Timothy C. Brightbill
(Name of Attorney)

American Manufacturers of Multilayered Wood Flooring
(Representative Of)

November 21, 2023
(Date)