**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
BEFORE THE HONORABLE M. MILLER BAKER, JUDGE

_____

|  |  |  |
|---|---|---|
| AMERICAN MANUFACTURERS OF MULTILAYERED WOOD FLOORING, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Court No. 21-000595 |
| UNITED STATES, | ) ) | |
| Defendant, | ) ) | |
| JIANGSU GUYU INTERNATIONAL TRADING CO., LTD., SINO-MAPLE (JIANGSU) CO., LTD., KINGMAN FLOORS CO., LTD., KEMIAN WOOD INDUSTRY (KUNSHAN) CO., LTD., HUZHOU SUNERGY WORLD TRADE CO., LTD., JIANGSU SIMBAFLOORING CO., LTD., DONGTAI FUAN UNIVERSAL DYNAMICS, LLC, AND ZHEJIANG FUERJIA WOODEN CO., LTD. | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendant-Intervenors. | ) ) | |

_____

---

**DEFENDANT'S RESPONSE TO DEFENDANT-INTERVENORS'
COMMENTS ON COMMERCE'S REMAND REDETERMINATION**

---

BRIAN M. BOYNTON
Principal Deputy Assistant
Attorney General

PATRICIA M.
MCCARTHY
Director

TARA K. HOGAN
Assistant Director

OF COUNSEL:

ALEXANDER FRIED
Attorney
Office of the Chief Counsel
for Trade Enforcement and
Compliance
United States Department of
Commerce
Washington, D.C.

Brendan Jordan
Trial Attorney
Commercial Litigation
Branch Civil Division
United States Department of
Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C.
Tel: (202) 616-0342

December 12, 2023

Attorneys for Defendant

## <u>TABLE OF CONTENTS</u>

BACKGROUND ................................................................................ 2

ARGUMENT .................................................................................... 7

    I.    Standard Of Review.................................................................. 7

    II.    The Court Should Sustain Commerce's Remand
           Redetermination ..................................................................... 8

          **a.** Commerce Correctly Declined To Revisit Its Prior
               Separate Rate Denial............................................................. 9

          **b.** Commerce's Remand Redetermination Is Supported By
               Substantial Evidence And In Accordance With Law........ 10

CONCLUSION .............................................................................14

# TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*Albemarle Corp. & Subsidiaries v. United States,*
  821 F.3d 1345 (Fed. Cir. 2016) ........................................................... 9, 11

*Bosun Tools Co. v. U.S.,*
  493 F. Supp. 3d 1351, Clip. Op. 21-23 (CIT 2021) .................................. 7

*Bosun Tools Co. v. United States,*
  No. 2021-1930, 2022 WL 94172 (Fed. Cir. Jan. 10, 2022) ........... 7, 9, 11

*Consol. Edison Co. v. NLRB,*
  305 U.S. 197 (1938) ................................................................................ 7

*Consolo v. Fed. Mar. Comm'n,*
  383 U.S. 607 (1966) ................................................................................ 8

*Linyi Chengen Imp. & Exp. Co. v. United States,*
  609 F. Supp. 3d 1392 (Ct. Int'l Trade 2022) ........................................ 13

*MacLean-Fogg Co. v. United States,*
  100 F. Supp. 3d 1349 (Ct. Int'l Trade 2015) .......................................... 7

*Nippon Steel Corp. v. United States,*
  458 F.3d 1345 (Fed. Cir. 2006) ............................................................... 8

*PrimeSource Bldg. Prods. v. United States,*
  581 F. Supp. 3d. 1331 (Ct. Int'l Trade 2022) ................................. *passim*

*SMA Surfaces, Inc. v. United States,*
  No. 21-00399, 2023 WL 6142127 (Ct. Int'l Trade Sept. 20, 2023) ....... 13

*Wyeth v. Kappos,*
  591 F.3d 1364 (Fed. Cir. 2010) ............................................................. 12

*Yangzhou Bestpak Gifts & Crafts Co. v. United States*,
716 F.3d 1370 (Fed. Cir. 2013) ................................................................ 11


**Statutes**

19 U.S.C. § 1516a(b) ..................................................................................... 7

19 U.S.C. § 1673d(c) .............................................................................. 5, 9, 11

19 U.S.C. § 1677e(a) ..................................................................................... 4

19 U.S.C. § 1677e(b) ..................................................................................... 5

19 U.S.C. § 1677e(c) ..................................................................................... 5

Statement of Administrative Action accompanying the Uruguay Round
Agreements Act,
H.R. Doc. No. 103-316 at 873 (1995) ............................................. *passim*


**Federal Register**

*Multilayered Wood Flooring from the People's Republic of China: Final
Results of Antidumping Duty Administrative Review, Final
Determination of No Shipments, and Partial Recission; 2018-2019*,
86 Fed. Reg. 59,987 (Dep't of Commerce Oct. 29, 2021) ......................... 2

# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE THE HONORABLE M. MILLER BAKER, JUDGE

| | | |
|---|---|---|
| _____ | ) | |
| AMERICAN MANUFACTURERS OF MULTILAYERED WOOD FLOORING, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Court No. 21-000595 |
| UNITED STATES, | ) ) | |
| Defendant, | ) ) ) | |
| JIANGSU GUYU INTERNATIONAL TRADING CO., LTD., SINO-MAPLE (JIANGSU) CO., LTD., KINGMAN FLOORS CO., LTD., KEMIAN WOOD INDUSTRY (KUNSHAN) CO., LTD., HUZHOU SUNERGY WORLD TRADE CO., LTD., JIANGSU SIMBAFLOORING CO., LTD., DONGTAI FUAN UNIVERSAL DYNAMICS, LLC, AND ZHEJIANG FUERJIA WOODEN CO., LTD. | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendant-Intervenors. | ) | |
| _____ | ) | |

## DEFENDANT'S RESPONSE TO DEFENDANT-INTERVENORS' COMMENTS ON COMMERCE'S REMAND REDETERMINATION

Defendant, the United States, respectfully submits this response to the comments filed by defendant intervenors Jiangsu Guyu International Trading Co., Ltd.; Sino-Maple (Jiangsu) Co., Ltd.; Kingman Floors Co., Ltd.; Kemian Wood Industry (Kunshan) Co., Ltd.; Huzhou Sunergy World Trade Co., Ltd.; Jiangsu Simba Flooring Co., Ltd.; Dongtai Fuan Universal Dynamics, LLC; and Zhejiang Fuerjia Wooden Co., Ltd. (collectively, Jiangsu Guyu) concerning the Department of Commerce's (Commerce) remand redetermination in this matter.  *See* Final Results of Redetermination Pursuant to Court Remand P.R.R. 4 (Remand Redetermination), Appx1299-1316.

## **BACKGROUND**

In the final results of the 2018-2019 administrative review, Commerce investigated mandatory respondents Fusong Jinlong Group (Jinlong) and Senmao Bamboo and Wood Industry Co., Ltd. (Senmao). *Multilayered Wood Flooring from the People's Republic of China: Final Results of Antidumping Duty Administrative Review, Final Determination of No Shipments, and Partial Recission; 2018-2019*, 86 Fed. Reg. 59,987 (Dep't of Commerce Oct. 29, 2021), Appx1071-1074, and accompanying Issues and Decision Memorandum, Appx1038-1070.

While Senmao participated in the review and received a zero rate, Jinlong notified Commerce that it did not intend to participate.  P.R. 279, Appx1038; *see also* Remand Redetermination at 2-3, Appx1300-1301.  Although Jinlong submitted a separate rate certification, Commerce determined that Jinlong did not establish eligibility for a separate rate because it failed to respond to Commerce's Section A questionnaire, which includes questions relevant to separate rate eligibility.  *Id.*  Commerce explained that this result was consistent with its initiation notice and practice, and found that Jinlong was part of the China-wide entity.  *Id.* (citing initiation notice).  Because Senmao's rate was zero, Commerce assigned a zero percent weighted-average dumping margin to all separate rate companies not individually examined in the review.  *Id.*

The Court remanded to Commerce to reconsider whether mandatory respondent Jinlong was eligible for a separate rate based on its separate rate certification, notwithstanding its failure to respond to Commerce's antidumping questionnaire.  ECF No. 51.  The Court held that, because Commerce accepted separate rate certifications for other non-individually examined respondents as sufficient evidence to grant

3

separate rates, this disparate treatment of similarly situated respondents is arbitrary and capricious. *Id.*

In its remand redetermination, pursuant to the Court's order, Commerce reconsidered Jinlong 's separate rate eligibility despite its failure to respond to Commerce's antidumping questionnaire. Under respectful protest, Commerce evaluated the separate rate certification on the record for Jinlong and found it eligible for a separate rate for the sole purpose of calculating the separate rate for respondents that continue to have entries enjoined for this period of review. Remand Redetermination at 4, Appx1302.[1]

Relying on 19 U.S.C. § 1677e(a)(2)(A), (B), and (C), Commerce then applied facts available in determining Jinlong's rate upon finding that Jinlong withheld information requested by Commerce, failed to provide the requested information in the form and manner requested, and thus, significantly impeded the proceeding. Remand Redetermination at 4, Appx1302. Additionally, because Jinlong failed to cooperate by not acting to the best of its ability in responding to Commerce's information requests during the review, Commerce applied

---

[1] Jinlong is not a party to the litigation and, as such, its rate was not subject to change in the remand. *See* Remand Redetermination at 2, Appx1300.

an adverse inference in selecting from the facts available. *Id.* at 7, Appx1305 (citing 19 U.S.C. § 1677e(b)). On this basis, Commerce assigned Jinlong the highest calculated rate for any respondent from a completed segment of the proceeding – 85.13 percent. *Id.* at 9, Appx1307. Because this rate was applied in a prior segment of the proceeding, Commerce did not corroborate it. *Id.*; 19 U.S.C. § 1677e(c)(2).

When the estimated weighted-average dumping margins for selected companies are all zero, *de minimis*, or based entirely on facts available, 19 U.S.C. § 1673d(c)(5)(B) permits Commerce to "use any reasonable method to establish the estimated all-others rate for exporters and producers not individually investigated, including averaging the estimated weighted average dumping margins determined for the exporters and producers individually investigated." In the SAA, Congress stated that when "the dumping margins for all the exporters and producers that are individually investigated are determined entirely on the basis of the facts available or are zero or *de minimis* . . . {t}he expected method in such cases will be to weight-average the zero and *de minimis* margins and margins determined

5

pursuant to the facts available, provided that volume data is available."
*See* Statement of Administrative Action accompanying the Uruguay
Round Agreements Act, H.R. Doc. No. 103-316 at 873 (1995) (SAA).  The
SAA further provides that "if this method is not feasible, or if it results
in an average that would not be reasonably reflective of potential
dumping margins for non-investigated exporters or producers,
Commerce may use other reasonable methods."  *Id.*

    As a result of Commerce's remand redetermination, the two
individually examined respondents, Senmao and Jinlong, had margins
that were either zero or based entirely on facts otherwise available.
Remand Redetermination at 11, Appx1309.  Because Jinlong did not
respond to the antidumping questionnaire, the quantity and value of its
sales during the period of review is missing from the record.  *Id.*
Therefore, it was not feasible for Commerce to calculate a weighted
average of the rates for the mandatory respondents.  *Id.*  Thus, in
accordance with the expected method, Commerce calculated the
separate rate for all eligible non-examined respondents by taking the
simple average of the individually investigated respondents' margins,

which resulted in an antidumping duty margin of 42.57%.[2]  Jiangsu Guyu contests this rate.

## ARGUMENT

### I.   Standard Of Review

In remand proceedings, the Court will sustain Commerce's determinations if they are "in accordance with the remand order, are supported by substantial evidence, and are otherwise in accordance with law." *MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)). "Substantial evidence" connotes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  Substantial evidence may be "less than the weight of the evidence" and "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by

---

[2]  While the SAA specifies that a weight average of individually investigated respondents is the expected method, both the Federal Circuit and this Court have referred to use of a simple average as the expected method, where volume is unavailable.  *Bosun Tools Co. v. United States*, No. 2021-1930, 2022 WL 94172, at *2 (Fed. Cir. Jan. 10, 2022) (affirming *Bosun Tools Co. v. United States*, 493 F. Supp. 3d 1351, Slip. Op. 21-23 (CIT 2021)); *PrimeSource Bldg. Prods., Inc. v. United States*, 581 F. Supp. 3d.1331, n.8 (CIT 2022).

substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (citations omitted).  Thus, a party challenging a determination under the substantial evidence standard "'has chosen a course with a high barrier to reversal.'" *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1352 (Fed. Cir. 2006) (citation omitted).

## II.   The Court Should Sustain Commerce's Remand Redetermination

Jiangsu Guyu argues that Commerce should have continued to deny Jinlong a separate rate on remand.  Alternatively, Jiangsu Guyu argues that Commerce should have deviated from the "expected method" in recalculating the separate rate.

While Jiangsu Guyu asserts that Commerce "provided insufficient evidence" as to why the expected method "is fair and equitable" to the separate rate companies, ECF No. 61 (Def. Int. Brief), that is not the standard.  Rather, "non-selected respondents bear the burden of providing evidence that the results of the expected method would not reasonably reflect the potential dumping margins of the non-selected respondents", not Commerce.  *PrimeSource Bldg. Prods. v. United States*, 581 F. Supp. 3d. 1331, 1341 (Ct. Int'l Trade 2022).  Jiangsu Guyu has failed to identify any record evidence to support its assertion

that the expected method is not reasonably reflective of its margins and

instead argue the method itself is simply unfair.  Def. Int. Brief at 9-10.

This argument runs counter to the statute, which authorizes Commerce

to average margins that are zero and based entirely on facts available

in determining a rate for companies not individually examined.  19

U.S.C. § 1673d(c)(5)(B); *Bosun Tools*, 2022 WL 94172.[3]  Because

Jiangsu Guyu failed to articulate why the expected method has resulted

in an unreasonable margin, the Court should sustain Commerce's

remand results.

      a.  Commerce Correctly Declined To Revisit Its Prior Separate
           Rate Denial

Jiangsu Guyu argues that Commerce's previous denial of a

separate rate to Jinlong was lawful.  Def. Int. Brief at 5.  As explained

in the remand redetermination, the Court has already held that not

relying on Jinlong's separate rate certification to determine eligibility

for a separate rate is arbitrary and capricious.  ECF No. 51; Remand

---

[3] Although this case is unpublished, the Court of International Trade has found it persuasive in similar situations.  *See PrimeSource Bldg. Prods.*, 581 F. Supp. 3d. at n.7 ("Although *Bosun* is an unpublished opinion, as discussed herein, this court finds the opinion helpful to its analysis because the reasoning is consistent with and builds on the Federal Circuit's prior reasoning in *Albemarle* and *Changzhou Hawd* and is otherwise persuasive.")

Redetermination at 5, Appx1303.  While Jiangsu Guyu may disagree with this decision, Commerce complied with the Court's remand order by considering Jinlong's separate rate certification to determine the company's separate rate eligibility on remand.

### b. Commerce's Remand Redetermination Is Supported By Substantial Evidence And In Accordance With Law

Jiangsu Guyu argues that the expected method produced a margin that was "not reasonably reflective of potential dumping margins" for non-investigated exporters or producers.  Def. Int. Brief at 8 (citing SAA).  In particular, Jiangsu Guyu argues that Commerce did not calculate a "fair and equitable" separate rate because it used an AFA rate in its calculation for cooperative non-investigated companies.  *Id.* at 9, 10-11.  Jiangsu Guyu also argues that there is no evidentiary support indicating that the recalculated rate is accurate.  *Id.* at 9-11. These arguments find no support in the law or record.  Because Commerce's methodology for calculating the separate rate on remand is supported by substantial evidence and in accordance with law, the Court should sustain Commerce's remand redetermination.

Jiangsu Guyu argues that it is unfair to apply an AFA rate to fully cooperative separate rate companies.  Def. Int. Brief at 9-10.  However,

the Court of Appeals for the Federal Circuit squarely rejected this

argument in *Bosun Tools* where it found that 19 U.S.C. § 1673d(c)(5)(B)

and the SAA "*explicitly* allow Commerce to factor both de minimis and

*AFA rates* into the calculation methodology." 2022 WL 94172 at *4

(quoting *Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716

F.3d 1370 (Fed. Cir. 2013) (emphasis added in original)); *see also*

*PrimeSource Bldg. Prods. v. United States*, 581 F. Supp. 3d at n.9.

Thus, the incorporation of an AFA rate assigned to a mandatory

respondent into the separate rate is not automatically unreasonable.

Rather, as specified in the SAA, it is "expected" that Commerce will

include such a rate absent evidence that doing so would "not be

reasonably reflective of potential dumping margins" for separate rate

respondents. SAA, H.R. Doc. No. 103-316 at 873 (1995).

In *Albemarle*, the Federal Circuit held that the "very fact that the

statute contemplates using data from the largest volume exporters

suggests an assumption that those data can be viewed as representative

of all exporters" absent evidence to the contrary. *See Albemarle Corp. v.*

*United States*, 821 F.3d 1345, 1353 (Fed. Cir. 2016). Commerce found

in the remand redetermination that there was no record basis to

11

conclude that dumping by the non-examined separate rate respondents is different from the mandatory respondents.  *See* Remand Redetermination at 15, Appx1313.  Although Jiangsu Guyu believes that the rate that Commerce applied in its remand redetermination is unfair, they do not identify – as the law requires – evidence suggesting that their level of dumping is different.

Instead, Jiangsu Guyu asks the Court to misapply the relevant legal framework.  Jiangsu Guyu claims that Commerce provided insufficient evidence as to how the expected method is fair and equitable for the separate rate companies.  They reason that Commerce should have deviated from the expected method because it results in Commerce averaging an AFA rate with a zero rate.  In other words, Jiangsu Guyu places the burden on Commerce to justify its use of the expected method without citing evidence that the rate assigned on remand is unreasonable.  This is not a reason to deviate from what Congress envisioned as the default methodology in this scenario.  *Wyeth v. Kappos*, 591 F.3d 1364, 1370 (Fed. Cir. 2010) ("{T}his court does not take upon itself the role of correcting all statutory inequities, even if it

could. In the end, the law has put a policy in effect that this court must enforce, not criticize or correct.").

Jiangsu Guyu relies on *Linyi Chengen Imp. & Exp. Co. v. United States* to argue that it is Commerce's fault there is sparse information in the record. 609 F. Supp. 3d 1392 (Ct. Int'l Trade 2022). However, this case is distinguishable. In *Linyi Chengen* , the Court remanded to Commerce for using the expected method *when the separate rate companies pointed to other evidence on the record* that showed that the rate was unreasonable. *Id.* at 1403–04 (discussing additional invoices that undermined the AFA rate). In this case, Jiangsu Guyu points to no evidence that would undermine the reasonability of the expected method rate.[4] Thus, unlike *Linyi Chengen* , there is no record evidence that undermines the resulting rate.

Lastly, Jiangsu Guyu argues that Commerce's separate rate determination "fails to satisfy the purpose of AFA" because it penalizes cooperative companies and minimizes the deterrent impact of an AFA

---

[4] Jiangsu Guyu has waived any arguments made before the agency not included in their brief. *See SMA Surfaces, Inc. v. United States*, No. 21-00399, 2023 WL 6142127, at *3 (Ct. Int'l Trade Sept. 20, 2023) ("Even if an argument has been raised to the agency, the failure to raise that argument before the court on remand generally constitutes waiver.")

13

rate by "dragging the all-others rate higher." *See* Def. Int. Br. at 10. However, Commerce did not apply an adverse inference to a cooperative party; rather, Commerce calculated the rate for separate rate respondents in accordance with the relevant statute. Moreover, because Commerce determined the separate rate in accordance with the statute, Jiangsu Guyu's hypothetical arguments regarding deterrence effects are misplaced.

Therefore, because "the non-selected respondents bear the burden of providing evidence that the results of the expected method would not reasonably reflect the potential dumping margins of the non-selected respondents{,}" and Jiangsu Guyu makes no arguments outside of critiquing the expected method itself, the Court should sustain Commerce's Remand Redetermination. *PrimeSource Bldg. Prods*, 581 F. Supp. 3d at 1341.

## CONCLUSION

For these reasons, the Court should sustain Commerce's remand redetermination and enter judgment for the United States.

Respectfully Submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant
Attorney General

PATRICIA M. MCCARTHY
Director

s/ Tara K. Hogan
TARA K. HOGAN
Assistant Director

s/ Brendan Jordan
Brendan Jordan
Trial Attorney
Commercial Litigation
Branch Civil Division
United States Department of
Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C.
Tel: (202) 616-0342

OF COUNSEL:

ALEXANDER FRIED
Attorney
Office of the Chief Counsel
for Trade Enforcement and
Compliance
United States Department of
Commerce
Washington, D.C.

December 12, 2023

Attorneys for Defendant

15

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing brief complies with the Rules of this Court and the Court's scheduling order in that it contains 2473 words, including text, footnotes, and headings. The estimate was computed using the word count feature in Microsoft Word.


/s/Brendan D. Jordan

Brendan D. Jordan