Slip Op. 24-13

# UNITED STATES
# COURT OF INTERNATIONAL TRADE

Court No. 21-00595

AMERICAN MANUFACTURERS OF MULTILAYERED WOOD FLOORING,

*Plaintiff*,

v.

UNITED STATES,

*Defendant*,

and

JIANGSU GUYU INTERNATIONAL TRADING CO., LTD., *et al.*,

*Defendant-Intervenors*.

Before: M. Miller Baker, Judge

## OPINION

[The court sustains the Department of Commerce's remand redetermination.]

Dated: February 8, 2024

*Mark Ludwikowski*, *Kelsey Christensen*, and *Sally Alghazali*, Clark Hill PLC of Washington, DC, on the comments for Defendant-Intervenors.

*Brian M. Boynton*, Principal Deputy Assistant Attorney General; *Patricia M. McCarthy*, Director; *Tara K.*

*Hogan*, Assistant Director; and *Brendan Jordan*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice of Washington, DC, on the comments for Defendant. Of counsel on the comments was *Alexander Fried*, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce of Washington, DC.

*Timothy C. Brightbill*, *Maureen E. Thorson*, *Stephanie M. Bell*, *Tessa V. Capeloto*, and *Theodore P. Brackemyre*, Wiley Rein LLP of Washington, DC, on the comments for Plaintiff.

*Baker*, Judge: This matter returns following a remand for the Department of Commerce to reconsider its determination that a mandatory respondent in an administrative review of an antidumping order on Chinese wood flooring was ineligible for a separate rate. If the company were so eligible, Commerce then would have to recalculate the duty for separate-rate producers not selected as respondents.

On remand, Commerce concluded under protest that the mandatory respondent is eligible and accordingly recalculated the margin for non-investigated separate-rate companies. Finding that determination supported by substantial evidence, the court sustains it.

I

This case involves the 2018–2019 review of an antidumping order on multilayered wood flooring from

China.[1] In the preceding review, Commerce found that the Fusong Jinlong Group (Jinlong) had shown independence from the Chinese government and was therefore eligible for a separate rate. *See Multilayered Wood Flooring from the People's Republic of China: Final Results of Antidumping Duty Administrative Review and New Shipper Review and Final Determination of No Shipments: 2017–2018*, 85 Fed. Reg. 78,118, 78,119 (Dep't Commerce Dec. 3, 2020).

When the Department opened the review at issue here, it stated that companies "selected as mandatory respondents . . . will no longer be eligible for separate rate status unless they respond" to a questionnaire. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 85 Fed. Reg. 6896, 6897 (Dep't Commerce Feb. 6, 2020), Appx1156.

Jinlong filed a "certification"—essentially, a form allowing for a streamlined renewal of its separate rate. Appx1075. The Department then selected it as a mandatory respondent and issued a questionnaire. In April 2020, the company advised that it was "unable to respond . . . for reasons associated with the ongoing COVID-19 health crisis." Appx1268.

---

[1] *See Multilayered Wood Flooring from the People's Republic of China: Final Determination of Sales at Less Than Fair Value*, 76 Fed. Reg. 64,318, 64,321 (Dep't Commerce Oct. 18, 2011).

Commerce denied the company's certification because of this failure. Appx1055–1056.[2] As a result, the Department calculated the separate rate for non-investigated entities based entirely on the zero percent duty assigned to the other mandatory respondent (which did receive a separate rate). Appx1057–1058.[3]

A group of domestic wood flooring producers then brought this suit challenging the Department's denial of Jinlong's certification and, relatedly, the calculation

---

[2] Jinlong instead received the 85.13 percent China-wide rate that applies by default to producers not eligible for a separate rate. Appx1013–1014.

[3] Neither the Tariff Act of 1930, as amended, nor Commerce's regulations address how the Department should establish the separate rate for companies not individually examined in an antidumping investigation or review of imports from a country with a nonmarket economy. In a case involving a market-economy country, the statute requires the Department to calculate an "all others" rate for non–individually investigated exporters and producers; that margin is to be "an amount equal to the weighted average of the estimated weighted average dumping margins established for exporters and producers individually investigated." 19 U.S.C. § 1673d(c)(5)(A). For a nonmarket-economy country such as China, Commerce uses the "all-others" mechanism to determine the separate rate. *See Changzhou Hawd Flooring Co. v. United States*, 848 F.3d 1006, 1011 (Fed. Cir. 2017); *see also New Am. Keg v. United States*, Ct. No. 20-00008, Slip Op. 21-30, at 9 n.6, 2021 WL 1206153, at *3 n.6 (CIT Mar. 23, 2021) (explaining that "the 'separate rate' applied to eligible producers and exporters . . . is analogous to the 'all-others rate' applied to non-investigated companies from market economy countries"). The Department's final determination here cited that mechanism. Appx1034–1035.

method used for the non-investigated separate-rate companies. If Jinlong were certified, its duty—if greater than zero—would have the domino effect of raising the separate-rate companies' margins. In effect, the battle over Jinlong's eligibility is a proxy war waged by the domestic producers against non-investigated Chinese producers eligible for a separate rate, several of whom intervened to defend Commerce's decision.[4]

Following briefing and argument, the court found from the bench that the Department's denial of Jinlong's certification was unlawful. ECF 52, at 32:5–33:22 (transcript). "This is, by [the court's] lights, arbitrary and capricious under the [Administrative Procedure Act] because Commerce is treating similarly situated [entities[5]] differently" and because the Department failed to address the company's separate-rate certification on the merits. *Id.* at 33:13–18. "Rather[,] Commerce viewed it as inadequate . . . solely because [the company] had the bad luck to be chosen as [a] mandatory respondent and regardless of whether the certification would have been adequate had the company not been so chosen." *Id.* at 33:18–22. The court expressed concern that certification was sufficient for some companies but not for others: "Without a rational explanation, the [c]ourt cannot sustain Commerce's determination here." *Id.* at 34:3–9.

---

[4] Jinlong, however, did not intervene.

[5] The court misspoke when it used the term "respondents" rather than "entities."

II

On remand, the Department reevaluated Jinlong's separate-rate eligibility under protest,[6] found it so eligible, and set a duty based on facts otherwise available with an adverse inference. Appx1300.[7] Commerce assigned the company a margin of 85.13 percent, the highest calculated rate for any respondent from a completed segment of the proceeding. Appx1307.[8]

The Department then had to calculate a margin for the companies that received separate rates without being individually investigated. The problem was that of the two mandatory respondents, one received a zero duty and the other (Jinlong) received a rate based entirely on facts otherwise available. Commerce noted that in such a circumstance, the statute allows it to "use any reasonable method . . . , including averaging the estimated weighted dumping margins determined for the exporters and producers individually in-

---

[6] "[W]hen Commerce advocates a position zealously and must abandon that position in order to comply with a ruling of the U.S. Court of International Trade, Commerce preserves its right to appeal if it adopts a complying position under protest." *Saha Thai Steel Pipe Pub. Co. v. United States*, 583 F. Supp. 3d 1350, 1353 (CIT 2021) (citing *Viraj Grp., Ltd. v. United States*, 343 F.3d 1371, 1376 (Fed. Cir. 2003)).

[7] For an explanation of facts otherwise available with an adverse inference, see *Hung Vuong Corp. v. United States*, 483 F. Supp. 3d 1321, 1336–39 (CIT 2020).

[8] This was the same rate assigned to the China-wide entity, *see above* note 2, so the net result for Jinlong remained unchanged.

vestigated." Appx1308–1309 (quoting 19 U.S.C. § 1673d(c)(5)(B)). The Department added that the Statement of Administrative Action accompanying the Uruguay Round Agreements Act (SAA)[9] states that the "expected method" in such cases "will be to weight-average" the zero, *de minimis*, and facts-otherwise-available margins, "provided that volume data is available." Appx1309 (quoting SAA, H.R. Doc. 103–316, vol. 1, at 873, 1994 U.S.C.C.A.N. 4040, 4201). If the "expected method" is not feasible, or results in a figure that is not reasonably reflective of potential dumping margins for non-investigated companies, the SAA allows the use of "other reasonable methods." SAA, H.R. Doc. 103–316, vol. 1, at 873, 1994 U.S.C.C.A.N. at 4201.

Because Jinlong did not answer the questionnaire, Commerce could not calculate a weighted average of the two rates. Appx1309. It therefore assigned the simple average—42.57 percent—as the separate rate for all eligible non-examined producers. *Id.*

In this litigation round, the private litigants have traded places. The domestic producers, who opposed the original determination, support the remand re-

---

[9] The SAA "shall be regarded as an authoritative expression by the United States concerning the interpretation and application of the Uruguay Round Agreements and this Act in any judicial proceeding in which a question arises concerning such interpretation or application." *Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States*, 66 F.4th 968, 972 (Fed. Cir. 2023) (quoting 19 U.S.C. § 3512(d)).

sults, while Defendant-Intervenors, who supported that determination, now oppose them.

### III

The domestic producers brought this suit under 19 U.S.C. § 1516a(a)(2)(A)(i)(I) and (B)(iii). Subject-matter jurisdiction is conferred by 28 U.S.C. § 1581(c).

The standard of review for a remand redetermination is the same as that on previous review. *Bethlehem Steel Corp. v. United States*, 223 F. Supp. 2d 1372, 1375 (CIT 2002). In § 1516a(a)(2) actions, "[t]he court shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). That is, the question is not whether the court would have reached the same decision on the same record—rather, it is whether the administrative record as a whole permits Commerce's conclusion.

> Substantial evidence has been defined as more than a mere scintilla, as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. To determine if substantial evidence exists, we review the record as a whole, including evidence that supports as well as evidence that fairly detracts from the substantiality of the evidence.

*Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1379 (Fed. Cir. 2003) (cleaned up).

IV

Defendant-Intervenors argue that Commerce did not act arbitrarily and capriciously in the first instance by denying Jinlong a separate rate. ECF 65, at 5–6. The court, however, declines to reconsider its prior ruling to the contrary.

Defendant-Intervenors do not challenge the Department's decision to accept the company's certification on its own merits. They instead argue that even if Commerce properly assigned Jinlong a separate rate, the agency improperly calculated their margins by averaging the company's rate with the other mandatory respondent's. *Id.* at 7. Despite raising several theoretical policy concerns, *id.* at 8–10, they fail to address Congress's mandate (in the market-economy context) that Commerce apply the methodology used here[10] where all mandatory respondents eligible for a separate rate receive duties that are zero, *de minimis*, or based entirely on facts otherwise available. *See above* note 3. Defendant-Intervenors thus "cannot contend that methodology employing [such] margins is disfa-

---

[10] Commerce's only deviation from the "expected method" was that it used the simple average, rather than the weighted average, of the two rates assigned to the mandatory respondents. Appx1309. The Department explained that it did so because the lack of sales quantity and value data from Jinlong made calculating a weighted average impossible. *Id.* The SAA envisions this possibility by conditioning use of the "expected method" on whether "volume data is available." H.R. Doc. 103–316, vol. 1, at 873, 1994 U.S.C.C.A.N. at 4201. Commerce's reasoning therefore suffices to explain why the use of a simple average is a "reasonable method."

vored when Congress has unmistakably explained that it is, in fact, preferred." *Albemarle Corp. v. United States*, 821 F.3d 1345, 1354 (Fed. Cir. 2016).[11] As Plaintiffs explain, "While Intervenors argue that it was inherently unfair for Commerce to rely in part on an adverse rate in determining the non-examined companies' margins, such a position cannot be squared with Congress's expressed expectation that [the Department] do just that." ECF 66, at 6.

The government correctly observes that Defendant-Intervenors make "no arguments outside of critiquing the expected method itself." ECF 67, at 14. In that respect, their avenue for relief lies with Congress, not with this court. *See Wyeth v. Kappos*, 591 F.3d 1364, 1370 (Fed. Cir. 2010) ("[T]his court does not take upon itself the role of correcting all statutory inequities, even if it could. In the end, the law has put a policy in effect that this court must enforce, not criticize or correct.").

---

[11] The court also approvingly cited a case reasoning that because the statute specifically refers to averaging the zero, *de minimis*, and facts-otherwise-available rates "as the sole provided example of a 'reasonable method[,] . . .' [i]t is impermissible to interpret this provision as expressing a preference against the use of such methodology in such situations. This must particularly be the case when the SAA expressly states that the allegedly disfavored methodology is in fact the expected method in such cases." *Id.* at 1354 n.8 (cleaned up) (quoting *Amanda Foods (Vietnam) Ltd. v. United States*, 714 F. Supp. 2d 1282, 1291 (CIT 2010)).


**Ct. No. 21-00595** **Page 11**

\* \* \*

For the reasons outlined above, the court sustains Commerce's redetermination. A separate judgment will issue. *See* USCIT R. 58(a).

Dated: February 8, 2024     <u>/s/ *M. Miller Baker*</u>
        New York, NY        Judge